Toby Anthony GALLEGOS, Appellant,

v.

UNITED STATES of America, Appellee.

J. B. MINGO, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 5391, 5392.

United States Court of Appeals Tenth Circuit.

Oct. 11, 1956.

---

David G. Housman, Albuquerque, N. M. (McAtee, Toulouse & Marchiondo, W. Peter McAtee, Albuquerque, N. M., on the brief), for appellants.

Melvin L. Robins, Asst. U. S. Atty., Albuquerque, N. M. (Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellants-defendants Mingo and Gallegos were indicted and convicted of a

violation of 21 U.S.C.A. § 174.[1] They appeal, alleging their conviction to be based (a) upon incompetent evidence which (b), even had it been competent, would only amount to basing one legal presumption upon another and (c) in any event did not amount to sufficient evidence to warrant conviction.

On December 15, 1955, the sheriff of Lincoln County, New Mexico, received an anonymous tip to the effect that three men driving a blue 1955 Ford automobile would soon be through his area and were unlawfully in possession of narcotics. With the active cooperation of the New Mexico State Police, road blocks were established and in a short time a blue 1955 Ford containing three men was stopped. The car was being driven by one Olguin[2] and defendants were in the car. A search of the car and the persons of the occupants revealed nothing. Nevertheless, Olguin and defendants were placed in custody and a more thorough search of the car the next day uncovered a quantity of heroin secreted behind the kick panel of the car. The New Mexico officers conducted all their activities without warrants of any kind because, as one officer frankly stated at the trial, "I didn't get a search warrant because I didn't believe I had sufficient grounds to obtain a search warrant". He most certainly was right in that observation. Worthington v. United States, 6 Cir., 166 F. 2d 557; Grau v. United States, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212.

The trial court admitted all testimony relating to the arrest, search and seizure over defendants' objection that such testimony was incompetent, being founded upon an unlawful search. Such ruling is defendants' first complaint upon appeal.

Federal courts zealously guard the rights of all persons to be free from unlawful search and seizure as prohibited by the Fourth Amendment and upon the slightest showing of direct or indirect participation by federal officers all fruits thereof are rendered inadmissible in federal prosecutions. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L. Ed. 1819. Nor does it matter that subsequent events show actual justification for the search, for an unlawful search conceived in evil is not baptized in maturity by success. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L. Ed. 520; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Wisniewski v. United States, 6 Cir., 47 F.2d 824; Henderson v. United States, 4 Cir., 12 F.2d 528. And while these rights are basic it is equally fundamental that the protection of the Fourth Amendment does not extend to the activities of state officers and cannot be used to coerce correct conduct upon their part. Evidence unlawfully obtained by such officers, when obtained neither by intent nor custom for use by federal authorities, is admissible in subsequent federal prosecutions. Gilbert v. United States, 10 Cir., 163 F.2d 325. The United States Supreme Court has summarized the doctrine thus: "The crux of that doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter." Lustig v. United States, supra [338 U.S. 74, 69 S.Ct. 1374].

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be fined not more than $2,000 and imprisoned not less than two or more than five years. * * *

"Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. Olguin died by hanging December 17th while in custody, probably a suicide.

■ In the instant case there is no evidence of any kind of direct or indirect participation by federal officers in the arrest or search of the defendants. The record is entirely silent as to the source of the telephone tip. The prosecution, therefore, falls within the "silver platter" category and the trial court correctly admitted the testimony of the New Mexico officers.

One further contention of defendants in this regard warrants consideration. Counsel states in his brief that at the time of making objection to the testimony of the New Mexico officers the trial court failed to receive evidence showing "participation by federal officers in instigating the illegal arrest, search and seizure involved". This court in its consideration of this critical contention is tightly bound by the record before us which we set out in its entirety:

"Q. All right, sir. Sheriff, when you found this in the glove compartment of the car, did you notice anything peculiar about it at that time? A. I did.

"Q. What was that? A. When I picked it up I picked [it] up by the rubber bulb, and I couldn't press it, and I pulled the glass off of it, and I found a small hypodermic needle inside of the rubber bulb.

(Off the record between counsel)

"Mr. Housman: May I approach the bench, Your Honor?

"The Court: You may.

(Off the record at the desk between Court and counsel)

(The following proceedings had at the desk out of the hearing of the jury:)

"The Court: The defendant has raised the question of an illegal search and seizure. These people have been in custody for a long period of time. Counsel was retained when?

"Mr. Housman: I was retained, I should say, about two months ago, Your Honor.

"The Court: Two months ago. And all the facts were known to the defendants and should have been known to counsel in the case. And a motion for bill of particulars was made and passed upon and overruled by the Court. And no motion to suppress evidence has been made. At this time I am going to permit the testimony to go right ahead, and if it should later develop that the constitutional rights of the defendants were violated, I might then consider the question. But it comes mighty late now, mighty late. At this time the objection is overruled.

(Whereupon proceedings were resumed in the presence of the jury:)

"Mr. Robins: We offer the dropper and the contents in evidence, Your Honor.

"The Court: Admitted."

■■ Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. provides that a motion to suppress evidence may be entertained by the court in its discretion at the trial although orderly procedure requires the motion to be made earlier. See Braswell v. United States, 10 Cir., 224 F.2d 706. That discretion should be liberally exercised in the furtherance of justice. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L. R. 409. However, in the absence of anything in this record showing the considerations urged upon the trial court we must and do presume that nothing transpired which would indicate defendants' ability to show any participation by the federal authorities in the search at issue.

■■ Defendants next claim by giving two instructions, one concerning the legal connotation of a conspiracy and the other based upon the statute making possession prima facie evidence of a violation of 21 U.S.C.A. § 174, the trial court committed error since the result was to permit the jury to base an inference on an inference or a presumption on a pre-

sumption. The court charged, in effect, that should the jury find from the evidence and beyond a reasonable doubt that defendants and all of them had unlawfully entered into a common plan to obtain possession of the drug, then possession of one or two was the possession of all; and further that possession is sufficient to authorize conviction unless explained by the defendants to the satisfaction of the jury. As defendants correctly contend, convictions cannot be based upon a pyramiding of inference on inference or presumption on presumption. Rosenberg v. United States, 10 Cir., 120 F.2d 935. But defendants here confuse the terms "inference" or "presumption" as used within the meaning of that rule with a fact proved by circumstantial evidence. The government asserted that the defendants and all of them were acting in concert and that all had possession of the narcotic; the defense denied possession and the government presented circumstantial evidence to prove the asserted fact. The jury found that the defendants were in fact in possession of heroin and then applied the presumption of the statute, concluding a violation of that statute. The trial court's instructions were not in error.

 Defendants claim the verdict of the jury was not based upon substantial evidence warranting their conviction. A careful examination of the record leads us to conclude otherwise. Without detailing the government's entire case it is sufficient to point out that, among other matters, it could properly be concluded that Olguin and the defendants had driven together from Denver, Colorado, to Juarez, Mexico, and were returning when apprehended; that the Ford car was borrowed and that operating expenses were being shared; that Olguin was a pusher of narcotics and that the defendants well knew it; that an eye-dropper was picked up at the inception of the trip which contained a small hypodermic needle; that both defendants were users of narcotics; that Mingo received a shot of heroin in El Paso and that both defendants had needle marks on their arms, some of which appeared fresh. The jury chose to reject defendants' contention that the deceased Olguin was the sole wrongdoer and chose instead to conclude that the trip was conceived and taken for the unlawful purpose of obtaining heroin. Proof of a direct statement is not required in order to show the parties were acting in concert. Nye & Nissen v. U. S., 9 Cir., 168 F.2d 846, affirmed 336 U. S. 613, 69 S.Ct. 766, 93 L.Ed. 919.

The judgments and each of them are affirmed.