502 P.2d 999

STATE of New Mexico, Plaintiff-Appellee,

v.

Charles Vestal CHAMBERS, Defendant-Appellant.

No. 9435.

Supreme Court of New Mexico.

Nov. 3, 1972.

Dan B. Buzzard, David W. Bonem, Clovis, for appellant.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

COMPTON, Chief Justice.

The defendant was charged with murdering his wife on December 1, 1970, in Curry County, to which he entered a plea of not guilty and not guilty by reason of insanity. Upon the suggestion of insanity the defendant was committed to the New Mexico State Hospital for psychiatric evaluation. Later, he was convicted of first degree murder and appeals from the judgment imposing sentence therein.

The appellant first contends that the court committed prejudicial error in giving the following instruction:

"In order to find the defendant not guilty by reason of insanity you must be satisfied that, at the time of committing the act, the accused, as a result of disease of the mind (a) did not know the nature and quality of the act or (b) did not know that it was wrong or (c) was incapable of preventing himself from committing it."

■ The claimed vice in the instruction is the term "you must be satisfied." This instruction precisely tracks the language suggested by this court in the case of State v. White, 58 N.M. 324, 330, 270 P.2d 727, and approved in State v. James, 83 N.M. 263, 490 P.2d 1236. It is our conclusion that the instruction is a correct statement of the law. Compare State v. Roy, 40 N. M. 397, 60 P.2d 646.

■ The appellant next contends that the trial court committed error in refusing his tendered instruction advising the jury that he would be given a sanity hearing and committed to the New Mexico State Hospital should he be found not guilty by reason of insanity. We see no error in the ruling of the court. The tendered instruction presented an irrelevant issue for consideration by the jury. This conclusion is in accord with those jurisdictions expressing a majority view on the issue.

Appellant further contends that the court committed error in refusing a tendered instruction relating to his diminished responsibility resulting from mental disease or defect of the mind.

The tendered instruction reads:

"If you find the defendant was legally sane, then the Court instructs you that as an additional defense if you find or if you have a reasonable doubt whether by reason of a disease or defect of the mind the defendant was incapable of thinking over the fatal act beforehand with a calm and reflective mind (or with a fixed and settled deliberation and coolness of mind) then, you shall find the defendant not guilty of first and second degree murder and will pass on to the question of whether he is guilty of voluntary manslaughter."

■ The appellant relies on State v. Padilla, 66 N.M. 289, 347 P.2d 312. Noticeably, the instruction in Padilla concluded, " * * * you shall find the defendant not guilty of first degree murder and will pass on to the question of whether he is guilty of *second degree murder*." (Emphasis added). While Padilla stands for the proposition that a disease or defect of the mind may render an accused incapable of cool deliberation and premeditation and may be sufficient to reduce the charge against him from first to second degree murder, it does *not* hold that such mental condition may reduce the charge to voluntary manslaughter. We conclude that the court did not err in refusing the tendered instruction.

The appellant further complains that the trial court erred in admitting into evidence the testimony of a psychiatrist based on out-of-court statements of third persons regarding the previous conduct of the appellant. Dr. John F. Hughes, a psychiatrist, first testified that appellant was suffering from "a temporary psychosis or insanity." He stated that it was his opinion that because of this psychosis the appellant was incapable of preventing himself from firing a gun at his wife and that the appellant on December 1, 1970, was incapable of premeditation, deliberation, or malice. On cross examination Dr. Hughes was ques-

tioned with regard to certain reports obtained by Mrs. Edna Fitz, the Community Services Social Worker, relating to Chambers' past behavior and which were a part of the hospital records. He had not seen them at that time. Later, after he had reviewed and evaluated the reports, he was recalled. On the basis of these reports, he testified that in his opinion the appellant was suffering from an emotional state at the time of the homicide and was sane at the time of the alleged offense. It was his opinion that the killing was not an isolated incident, but was part of a "permanent personality pattern of violence and threats of violence when under emotion within his household."

The New Mexico courts have not spoken directly on this point and cases from other jurisdictions offer divergent views. At 31 Am.Jur.2d, Expert and Opinion Evidence, § 86, the following is stated:

> " * * * the opinion of a medical expert as to the sanity of a defendant in a criminal proceeding based partly upon the statements of third persons out of court is generally considered inadmissable."

However, we think the better reasoned authorities take a different view. In Brown v. United States, 126 U.S.App.D.C. 134, 375 F.2d 310 (1967), the Court said:

> "In forming an expert opinion it may be necessary to rely upon information—hearsay though it be—which in part is derived from persons charged with the supervision of the one whose conduct is involved. The information is winnowed through the mental processes of the expert, and is by him either accepted or rejected. If information such as is here challenged is accepted as useable by the doctor it is not so liable to be untrustworthy as to require the court to rule that his opinion is unworthy of consideration by the jury."

Jenkins v. United States, 113 U.S.App. D.C. 300, 307 F.2d 637 (1962), citing McCormick, Ev. § 15 (1955), and 3 Wigmore,

Ev. § 688 (3rd ed. 1940), is a case on all fours with the one before us. A psychiatrist as an expert witness changed his diagnosis upon discovery of new records not previously available to him. The Court there stated:

> " * * * the better reasoned authorities admit opinion testimony based, in part, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession."

Quoting Sundquist v. Madison Ry., 197 Wis. 83, 221 N.W. 392 at 393, Jenkins said:

> "This court * * * will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true."

Again, quoting Blunt v. United States, 100 U.S.App.D.C. 266 at 275, 244 F.2d 355 at 364, Jenkins said:

> "The record in this case confirms the well-known practice of psychiatrists of relying upon psychologists' reports in aid of diagnosis. And it shows that Dr. Schaengold's changed diagnosis did not rest solely on the later test reports which were not in evidence when he testified, but also upon his own earlier examination. This diagnosis was 'the type of clinical opinion he is accustomed to form and to rely upon in the practice of his profession.'"

In Kitchens v. United States, 272 F.2d 757 (10th Cir. 1959), the trial court, in a like manner, admitted certain exhibits including a number of hospital records, findings of psychiatrists, and court records for the limited purpose of permitting experts to refer to them and be examined with regard to their contents.

It is clear that Dr. Hughes based his opinion largely on New Mexico State Hospital records and that this is the type of clinical opinion he is accustomed to

**312**

form and to rely upon in the practice of his profession.

■ Appellant finally contends that the trial court erred in admitting into evidence certain statements made by the appellant to law enforcement officers prior to the time he had been advised of his constitutional rights in accord with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

The record discloses that Chief of Police, Harry Kenneth Kingsbury, received a call that someone had been shot at a trailer park in Clovis. He went to the scene and observed a body lying in front of a trailer. A TV repairman was nearby and pointed toward the trailer. When the officer knocked on the door of the trailer a voice from within said, "In here." The officer entered, saw the appellant sitting at a table, and inquired, "What happened?" The appellant made the following response: "I shot her. She had it coming. The TV man saw everything."

We conclude that the officer was in a fact-finding process when the question was asked and that the statements made by appellant were voluntary, and made before any type of custodial interrogation, within the meaning of Miranda, could be said to have begun.

In State v. Lopez, 79 N.M. 282, 442 P.2d 594, this Court spoke on this point:

"It is quite evident here that appellant had neither been placed under arrest nor in any way detained when he volunteered the statement. Rather, it was made in answer to a question concerning what occurred and can be described as *an answer to a general question of a person who knew something of what transpired as a part of the fact-finding process*, held not to be prohibited in Miranda v. State of Arizona, supra." (Emphasis supplied).

The judgment should be affirmed. It is so ordered.

McMANUS and OMAN, JJ., concur.