597 P.2d 1183
STATE of New Mexico,
Plaintiff-Appellee,

v.

John DOE, a child, Defendant-Appellant.

No. 3727.

Court of Appeals of New Mexico.

March 15, 1979.

Rehearing Granted April 24, 1979.

Pedro G. Rael, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

John Doe, a minor, was adjudged a delinquent child by reason of conduct in violation of § 30–9–13(A), N.M.S.A.1978 entitled Criminal Sexual Contact of a Minor. He appeals. We reverse.

This matter comes here upon the record proper and a partial transcript of the testimony. We note errors appearing in the record which should be avoided.

1. On *July 13, 1978,* a Predispositional Order was entered. It states: "This matter coming on for trial this 13th day of July, 1978 . . ..", whereas, the matter came on for trial before a jury on June 29, 1978. Below the printed form, the following appears in handwriting.

*July 24, 1978*—disposition—confined D– Home [Juvenile Detention Home]. [Emphasis added.]

2. On *July 26, 1978,* a Notice of Appeal was filed of record from the Judgment and Sentence heretofore entered.

3. On *July 27, 1978,* Judgment and Disposition was entered of record. It states that John Doe had been adjudged a delinquent child "pursuant to verdict by the court," whereas, John Doe was found to have committed a delinquent act by verdict of the jury.

These errors, negligent in dress, need no explanation.

A. *Failure to file pre-adjudicatory motion does not prevent motion at trial.*

During the jury trial, Dr. Louis Benevento, employed by "D" home was called as a

witness by the State to give evidence about a medical test or examination for a sample taken from John Doe's body. John Doe moved to suppress the evidence because it was illegally taken in violation of Fourth Amendment rights. The trial court allowed the testimony to be presented to the jury.

In this appeal, the State argues that the evidence was properly admitted because the motion was untimely; that it should have been filed prior to trial under Rule 14 (formerly Rule 13) of the Rules of Procedure for the Children's Court. It reads:

> All pre-adjudicatory motions shall be filed:
>
> (a) within 10 days from the date the petition is filed * * * if the respondent is in * * * the custody of the department; or
>
> (b) in all other cases, within 20 days from the date the petition is filed * *.

■ The State is mistaken. A pre-adjudicatory motion must be filed within the time allowed if a respondent wants a hearing on the motion before commencement of trial. "The rules contemplate that objections to searches . . . and the like will be raised by prehearing motions similar to those used in district court. . . . Rule 13 does not, however, provide that objections not raised before the adjudicatory hearing are deemed waived." Harris, Children's Court Practice, etc., Under the New Rules, 6 N.M.L.Rev., 331, 354 (1975).

In fact, Fourth Amendment limitations on searches and seizures are extended to children's court as a basic right under the Children's Code. Section 32–1–27(C)(2), N.M.S.A.1978. See, *Matter of Doe*, 89 N.M. 83, 547 P.2d 566 (Ct. App. 1976); *Doe v. State*, 88 N.M. 347, 540 P.2d 827 (Ct. App. 1975).

■ John Doe's failure to file a pre-adjudicatory motion to suppress the evidence did not deny him the right to object to the admission of the evidence at trial.

B. *Doctor's test was taken at request of governmental authority.*

The state argues that the Fourth Amendment rights were not violated because Dr. Benevento acted solely for diagnostic purposes and treatment for record keeping at "D" home and not at the request of any governmental authority.

Dr. Benevento was employed at "D" home to perform medical services rendered to inmates who have any medical contact. He was present 5 days a week, Monday through Friday. The day that John Doe was taken to "D" home for detention, the intake officer told the doctor that John Doe was a new admission placed in isolation; that the intake officer had been informed that John Doe may have had a medical contact. On that basis, the doctor examined John Doe to identify the situation.

■ The State says that "evidence obtained by private parties and turned over to the police is not obtained in violation of the Fourth Amendment." We made that clear in *State v. Richerson*, 87 N.M. 437, 535 P.2d 644 (Ct. App. 1975). In such circumstances, the State is not involved in taking the tests and thus there was no search or seizure within the meaning of the Fourth Amendment. The Fourth Amendment prohibition against unreasonable searches and seizures was designed to protect people from government searches and did not apply to the acts of private individuals, *State v. Jenkins*, 80 Wis.2d 426, 259 N.W.2d 109 (1977), *Commonwealth v. Gordon*, 431 Pa. 512, 246 A.2d 325 (1968), even though the private individuals obtain the evidence illegally and turn it over to the police. *Commonwealth v. Storella*, 375 N.E.2d 348 (Mass. App. 1978).

■ However, the Juvenile Detention Home was created, maintained and supervised by the Board of County Commissioners who made the rules governing the conduct of the home. Section 33–6–5, N.M.S.A.1978. Dr. Benevento was employed and ordered to make tests of admitters who had

a medical contact. The examination and tests made by Dr. Benevento were made at the request of the Board of County Commissioners, a governmental authority. John Doe was in "jail" in the custody of an inmate officer who had placed John Doe in isolation. Dr. Benevento acted as an employee of the "D" home in searching for the evidence and then acquiring or "seizing" the evidence. He stood in the same shoes of a police officer who, at the request of a district attorney, enters a jail thirty days after an inmate had been incarcerated for assault and battery. He was told that the inmate carried a weapon strapped to his body. He ordered the inmate to expose his body and there he found the brass knuckles. Dr. Benevento and the police officer were acting under government authority, not for private purposes.

C. *John Doe's Fourth Amendment rights were violated.*

■■■ The State contends that even though Dr. Benevento "was an agent of the State or that the police were involved in the doctor's examination of defendant, the test would still not amount to an illegal search and seizure."

The criminal offense had occurred on March 23, 1978. Dr. Benevento obtained his evidence on April 18, 1978, 25 days later. There was no emergency. Dr. Benevento had John Doe expose himself. The doctor saw the evidence and took a sample from John Doe's body.

We note in passing that no evidence was presented that John Doe's medical condition on April 18, 1978 existed on March 23, 1978.

The Fourth Amendment provides that "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated . . . ." The prohibition appears in Art. II, § 10 of the New Mexico Constitution.

It is well established that a search and seizure is constitutionally lawful under any one of three instances: (1) if conducted pursuant to a legal search warrant, (2) by consent, or (3) incident to a lawful arrest. *State v. Sedillo*, 79 N.M. 289, 442 P.2d 601 (Ct. App. 1968). None of these instances appearing of record, John Doe's Fourth Amendment Rights were violated.

All evidence acquired by Dr. Benevento is suppressed.

Reversed.

IT IS SO ORDERED.

HERNANDEZ J., specially concurring.

LOPEZ J., concurs.

HERNANDEZ, Judge (specially concurring).

I concur.

I do not agree with the majority that Children's Court Rule 14 "does not, however, provide that objections not raised before the adjudicatory hearing are deemed waived." Rule 14, in my opinion, encompasses the same matters as Rules 18 and 33(a), N.M.R.Crim.Proc. In the case of *State v. Helker*, 88 N.M. 650, 545 P.2d 1028 (Ct.App.1975), cert. denied 89 N.M. 5, 546 P.2d 70 (1976), where we were considering Rule 18(c), we held that the "rules of criminal procedure can put a time limitation on the exercise of a constitutionally protected right." Consequently, it is my opinion that the defendant waived any claim that his constitutional rights had been violated.

The defendant's third point of error was that the trial court abused its discretion in not allowing him to cross-examine the doctor as to the results of the laboratory culture test which was negative as to gonorrhea. This is not quite accurate. The defendant was allowed to cross-examine the doctor about the laboratory culture test and elicited the answer that the results of that test were negative as to gonorrhea. The State objected and requested that the answer be stricken as hearsay. The motion was granted and the jury instructed to dis-

regard the answer. It is my opinion that the trial court erred in doing this. It must be mentioned that the State had qualified the doctor as an expert in the diagnosis of this venereal disease. Considerable latitude should be allowed in the cross-examination of expert witnesses for the purpose of testing knowledge, judgment and bias. *Elsea v. Broome Furniture Co.*, 47 N.M. 356, 143 P.2d 572 (1943). Rule 705, N.M.R.Evid. provides:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. *The expert may in any event be required to disclose the underlying facts or data on cross-examination.* (Emphasis added.)

The trial court also erred in striking the answer because it was hearsay. Our Supreme Court in *State v. Chambers*, 84 N.M. 309, 502 P.2d 999 (1972), adopted the following from *Brown v. United States*, 126 U.S. App.D.C. 134, 142, 375 F.2d 310, 318 (1967):

"In forming an expert opinion it may be necessary to rely upon information— hearsay though it be * * *. The information is winnowed through the mental processes of the expert, and is by him either accepted or rejected."

The Supreme Court in *Chambers* also quoted the following with approval from *Jenkins v. United States*, 113 U.S.App.D.C. 300, 304, 307 F.2d 637, 641 (1962):

"* * * the better reasoned authorities admit opinion testimony based, in part, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession."

Rule 703, N.M.R.Evid. provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the

subject, *the facts or data need not be admissible in evidence.*" (Emphasis added.)

## ON MOTION FOR REHEARING

SUTIN, Judge.

The State's Motion for Rehearing is granted to determine whether *State v. Helker*, 88 N.M. 650, 545 P.2d 1028 (Ct.App. 1975), Sutin, J., dissenting, conflicts with the opinion rendered. We hold that it does not.

The State argued that absent the filing of a pre-adjudicatory motion to suppress, a motion to suppress made during trial is untimely. We held that "A pre-adjudicatory motion must be filed within the time allowed if a respondent wants a hearing on the motion before commencement of trial. . . . John Doe's failure to file a pre-adjudicatory motion to suppress the evidence did not deny him the right to object to the admission of the evidence at trial."

The State now claims *Helker* holds that a trial motion to suppress is untimely. In *Helker*, during trial, the State offered defendant's confession in evidence. Defendant requested that a hearing be held out of the presence of the jury to determine whether the confession was voluntary. The court excused the jury and *held a hearing*, limited only to testimony of State's witnesses. Defendant then moved to examine other witnesses to determine whether the confession was voluntary, and the motion was denied as untimely. Apparently, the trial court viewed defendant's motion as a motion to suppress rather than one to determine the admissibility in evidence of defendant's confession.

In the appeal, defendant contended that the time limit set in Rule 18(c) of the Rules of Criminal Procedure to file a motion to suppress cannot deprive defendant of his constitutionally protected right to a trial hearing.

*Helker* disagreed based upon quotations from federal cases that interpreted prior

Rule 41(e) of the Federal Rules of Criminal Procedure [18 U.S.C.A. rule 41(e) (1961)]. What was not disclosed is the fact that Rule 41(e) did not set a time limitation on defendant's right to a trial hearing. Defendant had the right to move for suppression of evidence at trial. Whether the motion would be granted was placed in the discretion of the trial court. In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, 704 (1960), following the *Helker* quotation, Justice Frankfurter said:

> * * * As codified, the rule is not a rigid one, for under Rule 41(e) "the court in its discretion may entertain the motion [to suppress] at the trial or hearing." *This qualification proves that we are dealing with carrying out an important social policy and not a narrow, finicky procedural requirement. This underlying policy likewise precludes application of the Rule so as to compel the injustice of an internally inconsistent conviction.* * * [Emphasis added.]

Although orderly procedure requires the motion to be made earlier, the court in its discretion may entertain a motion at the trial stage. That discretion should be liberally exercised in the furtherance of justice. *Gallegos v. United States*, 237 F.2d 694 (10th Cir. 1956). In other words, the failure of defendant to file a motion to suppress prior to trial did not foreclose defendant's right to object to the admission of evidence during the trial. *Glisson v. United States*, 406 F.2d 423 (5th Cir. 1969). Rule 41(e) did not posit a rigid and absolute requirement that a motion to suppress be presented in limine. *Small v. United States*, 396 F.2d 764 (5th Cir. 1968). It is not fatal. *United States v. Wylie*, 149 U.S.App.D.C. 283, 462 F.2d 1178 (1972).

In *Helker*, the trial court did not deny defendant's request. It exercised its discretion and granted defendant a hearing. Instead of receiving defendant's evidence upon whom the burden rested, the court received only the testimony of the State's witnesses. The injustice of this internal inconsistent conviction establishes that *Helker* carried out a "finicky procedural requirement."

The conclusion of *Helker*, "that rules of criminal procedure can put a time limitation" on defendant's protected rights, did not state that the absence of a pre-trial motion to suppress foreclosed defendant's right to pursue this motion for the first time in an appeal. The purpose of suppression rules is to require an orderly procedure before trial, not a denial of constitutionally protected rights.

■ We must emphasize once again that defendant's duty to move for suppression of evidence before trial is discretionary. Rule 18(b) reads:

> A person aggrieved by a confession * * * *may* move to suppress such evidence. [Emphasis added.]

If a person desires to have a pre-trial hearing, then "A motion to suppress shall be made within twenty days * * *." Rule 18(c). It does not require the citation of innumerable authorities that "The word *may* usually is employed to imply permissive or discretional, and not mandatory, action or conduct. 57 C.J.S. May p. 456." *Shea v. Shea*, 537 P.2d 417, 418 (Okla.1975). If the Supreme Court in the adoption of the Rules of Criminal Procedure had established Rule 18(b) to be mandatory and to limit defendant's rights to pre-trial procedure, it would have done so. Rule 12(b)(3) of the Federal Rules of Criminal Procedure on Pre-Trial Motions reads in pertinent part:

> * * * The following *must* be raised prior to trial:
>
> *   *   *   *   *   *
>
> (3) Motions to suppress evidence. [Emphasis added.]

We hold that *Helker* is not in conflict with the opinion in the instant case.

HERNANDEZ, J. specially concurring.

LOPEZ, J., concurs.

HERNANDEZ, Judge (specially concurring).

Rule 13 of the Children's Court Rules provides:

"All pre-adjudicatory motions shall be filed:

(a) within 10 days from the date the petition is filed or within 10 days from the appointment of counsel for the respondent or entry of appearance by counsel for the respondent, whichever is later, if the respondent is in detention or the alleged neglected child is in the custody of the department; or

(b) in all other cases, within 20 days from the date the petition is filed or within 20 days from the appointment of counsel for the respondent or entry of appearance by counsel for the respondent whichever is later."

Rule 18(b) and (c) of the Rules of Criminal Procedure provide:

"(b) A person aggrieved by a confession, admission or other evidence may move to suppress such evidence.

(c) A motion to suppress shall be made within twenty days after entry of a plea, unless, upon good cause shown, *the trial court waives the time requirement of the rule*." [Emphasis added.]

Rule 33(e) and (f) of the Rules of Criminal Procedure provides:

"(e) The following defenses or objections must be raised prior to trial:

(1) defenses and objections based on defects in the initiation of the prosecution, or

(2) defenses and objections based on defects in the complaint, indictment or information other than a failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at anytime during the pendency of the proceeding. Failure to present any such defense or objection, other than the failure to show jurisdiction or charge an offense, constitutes a waiver thereof, *but the court for cause shown may grant relief from the waiver*. If any such objection or defense is sustained and is not otherwise remediable, the court shall order the complaint, indictment or information dismissed.

(f) All motions, unless otherwise provided by these rules or unless otherwise ordered by the court, shall be made at the arraignment or within twenty days thereafter, *unless upon good cause shown the court waives the time requirement.* [Emphasis added.]

Implicit in Rule 13, supra, are the two exceptions made explicit in Rule 33, supra, to-wit: "failure to show jurisdiction in the court or to charge an offense." That is all pre-adjudicatory motions except those alleging lack of jurisdiction and failure to charge an offense must be made within the time limits prescribed in Rule 13, failure to do so shall constitute a waiver by defendant thereof. There being no provision for a waiver of the time requirement by the court.

The Rules of Criminal Procedure were promulgated by the Supreme Court on May 3, 1972, with an effective date of July 1, 1972. The Children's Court Rules were promulgated by the Supreme Court on January 14, 1976, with an effective date of April 1, 1976. So it can reasonably be inferred that the omission of a time waiver provision by the court in Rule 13 of the Children's Court Rules was deliberate. This inference is further supported when one notes the very short time provisions of the Children's Court Rules. Considering that the purpose of rules such as these is to prevent the interjection of collateral issues into a trial or hearing and to prevent the prolongation of such proceedings by interruptions to consider questions and issues that could easily be considered prior to trial or hearing. And as we stated in *State v. Helker*, supra, "rules of criminal procedure can put a time limitation on the exercise of a constitutionally protected right."

I concur in the majority opinion to reverse for the following reason only.

The defendant's third point of error was that the trial court abused its discretion in not allowing him to cross-examine the doctor as to the results of the laboratory culture test which was negative as to gonorrhea. This is not quite accurate. The defendant was allowed to cross-examine the doctor about the laboratory culture test and elicited the answer that the results of that test were negative as to gonorrhea. The State objected and requested that the answer be stricken as hearsay. The motion was granted and the jury instructed to disregard the answer. It is my opinion that the trial court erred in doing this. It must be mentioned that the State had qualified the doctor as an expert in the diagnosis of this venereal disease. Considerable latitude should be allowed in the cross-examination of expert witnesses for the purpose of testing knowledge, judgment and bias. *Elsea v. Broome Furniture Co.*, 47 N.M. 356, 143 P.2d 572 (1943). Rule 705, N.M.R.Evid. provides:

> "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. *The expert may in any event be required to disclose the underlying facts or data on cross-examination.* [Emphasis added.]

The trial court also erred in striking the answer because it was hearsay. Our Supreme Court in *State v. Chambers*, 84 N.M. 309, 502 P.2d 999 (1972), adopted the following from *Brown v. United States*, 126 U.S. App.D.C. 134, 142, 375 F.2d 310, 318 (1967):

> "In forming an expert opinion it may be necessary to rely upon information—hearsay though it be  *  *  * . The information is winnowed through the mental processes of the expert, and is by him either accepted or rejected."

The Supreme Court in *Chambers* also quoted the following with approval from *Jenkins v. United States*, 113 U.S.App.D.C. 300, 304, 307 F.2d 637, 641 (1962):

> " *  *  * the better reasoned authorities admit opinion testimony based, in part, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession."

Rule 703, N.M.R.Evid. provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.*" [Emphasis added.]