606 P.2d 183

STATE of New Mexico,
Plaintiff-Appellee,

v.

Michael LUNA, Defendant-Appellant.

No. 12131.

Supreme Court of New Mexico.

Jan. 28, 1980.

Martha A. Daly, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Lawrence A. Gamble, Charlotte H. Roosen, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Chief Justice.

Defendant appeals his convictions of first-degree murder, under the felony-murder doctrine, and aggravated burglary. He was sentenced to life imprisonment for the murder charge and to a ten to fifty year sentence for the aggravated burglary charge.

The defendant raises seven issues on appeal:

I. Were the stop, arrest and searches of the defendant valid?

II. Did the trial court abuse its discretion by denying defendant's motion for a bifurcated trial?

III. Did the trial court commit reversible error by refusing to allow lay witnesses to express their opinions regarding defendant's sanity?

IV. Did the trial court commit reversible error by failing to instruct the jury on the defendant's theories of the case?

V. Did the trial court commit reversible error by failing to direct a verdict of not guilty by reason of insanity as to the felony-murder charge?

VI. Did the trial court commit reversible error by refusing to instruct the jury on the consequences of a verdict of not guilty by reason of insanity?

VII. Did the trial court commit cumulative error, amounting to an absence of a fair trial?

We affirm the conviction of the defendant.

On April 5, 1977, Officer Homer was investigating a residential burglary of the Taylor residence in Roswell. During the investigation, the officer went next door to the Nelson residence and discovered the body of Nina Nelson in a bedroom. She died from a massive blunt trauma to her head; she had also been stabbed over 40 times. Later a purse taken from the Taylor residence was discovered three houses down from the Nelson home. A footprint was beside the purse, and officers made a plaster cast of the print.

On April 6, 1977, Officer Fabry saw defendant pull away from a street intersection at a high rate of acceleration, causing the rear tires of his car to spin on the pavement. Fabry followed defendant for about one and one-half miles, pulled him over, and cited him for exhibition driving. § 20–84.1, Roswell City Code (1962) (Supp. 1970) (current version at Section 66–8–115, N.M.S.A.1978, by adoption). While talking to defendant, Fabry noticed that defendant's breath smelled of alcohol. The officer then arrested defendant for violating an ordinance prohibiting a minor from allowing himself to be served outside the presence of his parents or guardian. § 6–10(b), Roswell City Code (1962). He then searched the inside of the car, finding a bottle of liquor, two knit ski caps and some bullets. Fabry testified that the bottle was in plain view from outside the car, but nowhere stated that he saw it before arresting defendant. A pat-down search of defendant on the scene disclosed a pocket-knife and a marijuana pipe. The officer had not had a previous encounter with the defendant and knew nothing about him previous to the arrest. The defendant was taken to the police station where he was interrogated for fifteen to twenty minutes regarding the Nelson murder. Police seized defendant's tennis shoes to compare with the footprint found next to the Taylor purse. Defendant was again searched prior to incarceration, revealing a baggie of marijuana in his undershorts. Police then searched defendant's car, which had been taken to the police station. No items were seized.

On April 7, 1977, defendant's car was again searched. Two officers had been assigned on that day to investigate a burglary at the Sanchez residence. They realized that the liquor bottle which had been seized from the defendant's car the night before had come from the Sanchez home, so they searched the car for further evidence. The search produced two stolen speakers from the rear of the car, which were in plain view. Sanchez identified the speakers as hers.

A search warrant for defendant's home was then procured, and the search produced evidence leading to defendant's arrest for the Nelson murder.

Defendant filed a motion to suppress all of the physical evidence seized by the police. The district court ruled that the initial stop was based on probable cause, that the subsequent arrest for the liquor violation was also based on probable cause, that the initial search by Fabry was proper, and that seizure of defendant's pipe and shoes was proper. The court also found that the searches of defendant's car on April 6 and 7 were improper warrantless searches and ordered the suppression of all evidence seized in the April 7 search. The state appealed the order to the Court of Appeals pursuant to Section 39–3–3, N.M.S.A.1978. The Court of Appeals reversed the trial court in part, holding that the trial court should not suppress the items seized in the April 7 search. Defendant then applied to this Court for a writ of certiorari, which was denied. *State v. Luna*, 91 N.M. 560, 577 P.2d 458 (Ct.App.1978), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978).

■ I. At the outset, we are presented with the issue of whether it is proper for this Court to decide issues which were once presented to us in this same case, but which we declined to decide. At this stage, however, we are compelled to review those issues in this appeal by Art. VI, Section 2 of the New Mexico Constitution. That section provides for a direct appeal to this Court from a judgment of a district court imposing a sentence of capital punishment or life

imprisonment. To refuse now to hear the issues which we once declined to review by writ of certiorari would be to effectively deny defendant his right to appeal his conviction to this Court. We therefore review the arrest, search and seizure issues presented in this appeal.

■ Defendant argues first that the stop was invalid because his acts were not proscribed by the exhibition driving ordinance. The ordinance reads in pertinent part:

It shall be unlawful for any person to drive a vehicle on a street or highway in any race, speed competition or contest, drag race or acceleration contest, test of physical endurance, exhibition of speed or acceleration, or for the purpose of making a speed record, whether or not the speed is in excess of the maximum speed prescribed by law, and no person shall in any manner participate in any such race, drag race, competition, contest, test or exhibition.

§ 20–84.1, Roswell City Code, *supra.* The defendant maintains that he could not be stopped for exhibition driving unless there was some type of public display. The facts of this case do not support this argument. Defendant was driving on a public street, and at least one other person, the police officer, witnessed the event. Even if some type of public display were necessary, a question we do not reach, it was present here, so the stop was reasonable and valid.

■ Defendant next argues that his arrest was invalid. He was arrested under an ordinance which provides in pertinent part:

It shall be unlawful for any minor to buy, receive or permit himself to be served with any alcoholic liquor, except when accompanied by his parent, guardian, spouse or an adult person into whose custody he has been committed for the time by some court who is actually, visibly and personally present at the time such alcoholic liquor is bought or received by him or served or delivered to him.

§ 6–10(b), Roswell City Code, *supra.* The violation of a municipal ordinance constitutes a petty misdemeanor because imprisonment may not exceed ninety days.

§ 3–17–1, N.M.S.A.1978; § 30–1–6(C), N.M. S.A.1978. *See also* Section 60–10–16(B), N.M.S.A.1978 (Cum.Supp.1979). A warrantless arrest of a person for violation of a misdemeanor is valid only if the offense occurred in the arresting officer's presence. *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886 (1944). Defendant contends that the officer had no reasonable grounds to believe that the act of allowing himself to be served occurred in his presence. He also argues that the officer had no grounds for believing that he was unaccompanied by his parents when he was served.

■ There is no testimony that the officer ever saw the defendant drinking or being served before the arrest. We therefore agree that the officer had no reasonable grounds to believe that the specific misdemeanor of allowing oneself to be served had been committed in his presence. The evidence does however support a reasonable determination by the officer that the defendant committed the misdemeanor of exhibition driving while in his presence. § 20–84.1, Roswell City Code, *supra.* The evidence also supports a reasonable determination by the officer that the defendant may have been driving while intoxicated, in violation of Section 66–8–102, N.M.S.A.1978 (Cum.Supp.1979). An arrest for such a violation is allowable pursuant to Section 66–8–122(B), N.M.S.A.1978 (Cum.Supp.1979). The grounds supporting these determinations were known to the officer at the time of the arrest.

■ We believe that where there are reasonable grounds supporting the warrantless arrest of a person for the commission of a misdemeanor, the arrest is not invalidated because the officer gave the wrong reasons for the arrest. *State v. Cloman,* 254 Or. 1, 456 P.2d 67 (1969); *see United States v. Richerson,* 461 F.2d 935 (10th Cir. 1972), *cert. denied,* 409 U.S. 883, 93 S.Ct. 172, 34 L.Ed.2d 139, *reh. denied* 409 U.S. 1119, 93 S.Ct. 916, 34 L.Ed.2d 704 (1973). The proper misdemeanor charge must, however, be based upon facts known to the officer at the time of the arrest, and the offense must have been committed in his presence. *Cave*

*v. Cooley, supra.* If the proper charge is a felony, the arrest must be based upon probable cause. *United States ex rel. La Belle v. La Vallee,* 517 F.2d 750 (2d Cir. 1975), *cert. denied,* 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976).

The arrest of the defendant in the present case was valid because the officer could have properly arrested him for driving while intoxicated.

After the stop and arrest, the defendant was subjected to a pat-down search. A marijuana pipe and a pocket knife were seized. This search and seizure is not challenged on appeal. While still on the scene, the arresting officer removed a whiskey bottle, two knit caps and some bullets from defendant's car. This is also not challenged.

■ Defendant was then taken to the police station where he was apparently recognized as a person who had been implicated in several burglaries in the area, and so was questioned about the Nelson murder. The police at that time seized the tennis shoes defendant was wearing, which appeared to match the footprint found next to the Taylor purse. It is claimed that the warrantless seizure of the shoes was unreasonable. We disagree. It was reasonable for the officers to believe that the shoes were possible evidence of a crime, because the defendant had been implicated in other burglaries, and the police already knew of the footprint found near the Taylor purse. The intrusion was justified. *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); *State v. Luna, supra.*

Defendant was given a further search of his person prior to his incarceration. This search produced a baggie of marijuana. This is not challenged on appeal.

■ Defendant's car, which was in the custody and control of the police, was searched after the interrogation. The search was warrantless, and the trial court ruled it unreasonable. The Court of Appeals reversed. *State v. Luna, supra.* We hold that the trial court was correct and reverse the Court of Appeals on this issue.

The Court of Appeals reasoned that because the initial search was justified, the subsequent search was not an unreasonable intrusion. Relying on *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), *reh. denied,* 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), and *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), *reh. denied,* 423 U.S. 1081, 96 S.Ct. 869, 47 L.Ed.2d 91 (1976), the Court held that exigent circumstances present at the time of the initial search, do not need to be independently established at the time of the delayed search at the stationhouse. We do not agree that the rationale used in those cases is applicable to the facts of this case. At the time of the initial stop, arrest and search of the defendant, the officer had no reason to believe that the defendant may have committed any crimes other than exhibition driving, driving while intoxicated and possession of contraband. There was no reason to suspect the defendant of having evidence relating to burglary or homicide until he was taken to the police station. When the stationhouse search of the car was conducted, it was for the purpose, in one officer's mind, of finding evidence relating to the murder. This intrusion was different in scope from the initial intrusion at the scene, so it cannot be justified on that basis. *Compare Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) with *Chambers v. Maroney, supra,* 399 U.S. at 47, 90 S.Ct. at 1979.

■ While there may have been probable cause to search the car at the station, there were no exigent circumstances. It is clear that probable cause alone is not enough, in most circumstances, for a valid search. Probable cause must be coupled with a warrant or exigent circumstances in order to justify a search. *See Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). Here, the defendant was incarcerated and the car was in the custody and control of the police. Probable cause to search for evidence relating to the homicide was not present until that time. There is no reason, under this set of facts, not to interpose a neutral and detached

magistrate between the police and a person whose rights must be protected. This search of defendant's car, however, did not produce any evidence.

 On the following day, a second warrantless search of the car was made. Two speakers which had been seen previously, and which were suspected of having been stolen from the Sanchez home were seized along with some related items. The trial court found this search and seizure unreasonable, but was reversed by the Court of Appeals. We reverse the Court of Appeals on this issue as well. The Court of Appeals justified this search with the plain view exception to the warrant requirement. However, plain view alone is not enough. Additional requirements are that the officers be lawfully in the position from which they observe the evidence, that they discover it inadvertently, and that the incriminating nature be immediately apparent. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh. denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); *United States v. Berenguer,* 562 F.2d 206 (2d Cir. 1977). Here, at the time the speakers were first seen, their incriminating nature was not apparent, and at the time they were seized, the discovery was no longer inadvertent. The speakers, and anything else discovered as a result of this search should be suppressed as evidence. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 The harm complained of, however, was not that the speakers were introduced as evidence at trial, but that they were a basis for a search warrant being issued for defendant's home. After reading the affidavits for the search warrant, it is our judgment that there remained sufficient independent cause for the warrant to have issued. Even if the particular items seized from the car, and anything connected with them had not been included as reasons in support of the warrant, it still could have been validly issued. The affidavit contained information that defendant had been arrested for three burglaries where property was recovered from him and those he sold it to; that he was implicated in three more burglaries; that a footprint matching defendant's shoe was found next to a purse taken from the Taylor residence; that keys taken from the Taylor residence were found at the point of entry of the Nelson burglary and homicide; and that defendant was identified by reliable persons as being in the area prior to the burglary. This information alone was sufficient for the issuance of the search warrant. The only supporting factor which could not have been used was that "items taken in [the Sanchez] burglary were found in Mike Luna's car." Those items, being the speakers which were illegally seized, could not have been used in support of the warrant. The liquor bottle, also stolen in the Sanchez burglary, was seized validly and could have been properly used. Thus the search of the defendant's home was valid, and the items seized therefrom not suppressable.

II. The defendant claims that the trial court abused its discretion in denying defendant's motion for a bifurcated trial. He argues that when an insanity defense is raised, the trial court, in order to avoid a violation of a defendant's fifth amendment rights and due process rights, should separate the issue of insanity from the issue of guilt. In order to effectively present his defense of insanity, the defendant argues, he had to introduce evidence of prior acts and self-incriminating statements made to psychologists and psychiatrists. He further argues that an admonition to the jury that such evidence should not be used on the issue of guilt is insufficient, so the trial should be divided into two stages. In one stage the jury would determine whether the defendant was sane at the time of the offense and whether he was capable of forming a specific intent. The other stage of the trial would be for the determination of whether the defendant committed the physical acts. The same jury could be used for both stages, or separate juries could be used, depending on which stage comes first.

 We agree that there may be circumstances where a bifurcated trial might be preferable to an ordinary trial. We are

not willing to hold, however, that due process requires bifurcation. *See Higgins v. United States*, 130 U.S.App.D.C. 331, 401 F.2d 396 (D.C.Cir.1968); *Holmes v. United States*, 124 U.S.App.D.C. 152, 363 F.2d 281 (D.C.Cir.1966). Moreover, a bifurcated trial may itself, in some circumstances, violate a person's due process rights where an ordinary trial would not. *State v. Shaw*, 106 Ariz. 103, 471 P.2d 715 (1970), *cert. denied*, 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622 (1971); *Sanchez v. State*, 567 P.2d 270 (Wyo.1977); *contra, Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). We hold, on this issue, that until our Rules of Criminal Procedure for the District Courts are amended to accommodate for such a change in the order of a trial, the order prescribed by Rule 40 of the Rules of Criminal Procedure for the District Courts should be followed. N.M.R.Crim.P. 40, N.M.S.A.1978.

■ III. The defendant's next claim is that the trial court committed reversible error by not allowing lay witnesses to give their opinion as to defendant's sanity. We do not agree. The witnesses, two cellmates and an acquaintance of defendant, were allowed to testify before the jury as to their observations of defendant's behavior. This Court has held that the opinion testimony of laymen may be received on the question of insanity, in the court's discretion, based upon the opportunity and knowledge of the witness to form an opinion. *State v. Lujan*, 87 N.M. 400, 534 P.2d 1112 (1975) *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 400 (1975), *see* N.M.R.Evid. 701, N.M.S.A.1978. We find no abuse of discretion on the part of the trial court, which based upon the evidence, could have properly ruled that the witnesses did not have a sufficient basis on which to form an opinion, or that their opinion would not have been helpful to a clear understanding of the issue.

■ IV. The defendant also argues that the trial court committed reversible error by failing to instruct the jury on the defendant's theories of the case. The defendant tendered an instruction stating that even if he was found sane at the time of the crime, the jury must still determine whether he had an ability to form an intent to commit the underlying felony. *See* N.M. U.J.I.Crim. 41.00, Use Note 4, N.M.S.A. 1978. Though this may be a correct statement of the law, the matter was adequately covered by other instructions given which unambiguously instructed on intent to commit aggravated burglary. N.M.U.J.I.Crim. 16.22 N.M.S.A.1978. Under the circumstances of this case, we are of the opinion that the tendered instruction could not have been beneficial, in any way, to the defendant, particularly when considered by a jury of lay people. The refusal to give the requested instruction was not error. *See State v. Valenzuela*, 90 N.M. 25, 559 P.2d 402 (1976).

■ Defendant argues that an instruction on diminished capacity should have been given. N.M.U.J.I.Crim. 41.11, N.M.S.A.1978. The record, however, does not contain any evidence which reasonably tends to show that defendant's claimed intoxication rendered him incapable of acting in a purposeful way. The tendered instruction was properly refused. *State v. Gardner*, 85 N.M. 104, 509 P.2d 871 (1973), *cert. denied* 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973).

■ V. Defendant's next claim is that the trial court committed reversible error by failing to direct a verdict of not guilty by reason of insanity as to the felony-murder charge. We disagree with this claim for two reasons. First, the necessary *mens rea* for first-degree murder is presumed where the underlying felony is inherently or foreseeably dangerous to human life. *State v. Harrison*, 90 N.M. 439, 564 P.2d 1321 (1977). There was sufficient evidence that the defendant could form the intent to commit aggravated burglary, and the jury found that he did have the requisite intent. Secondly, the record contains conflicting evidence as to the defendant's sanity at the time the stabbing was initiated. There was testimony that defendant knew his acts could kill Ms. Nelson, that he knew his actions were wrong, and that he

could have stopped himself from stabbing her. This evidence was sufficient to allow the issue of defendant's sanity to go to the jury. If the defendant could have stopped himself from stabbing the victim, knew the nature and quality of his act and knew that it was wrong, the jury could find the defendant sane. *State v. White*, 58 N.M. 324, 270 P.2d 727 (1954). The test for insanity is not whether the defendant is incapable of terminating his wrongful act. The trial court acted properly in allowing the jury to consider the issue.

VI. The defendant's next claim is that the trial court committed reversible error by refusing to instruct the jury on the consequences of a verdict of not guilty by reason of insanity. In *State v. Chambers*, 84 N.M. 309, 502 P.2d 999 (1972), this Court held that it was not error for a court to refuse to give such an instruction to the jury. Defendant asks that we overrule that case, but we decline to do so. We are of the opinion that "[t]he tendered instruction presented an irrelevant issue for consideration by the jury." *Id.* at 310, 502 P.2d at 1000.

VII. The defendant's final contention is that certain of the trial court's errors had a cumulative effect amounting to the absence of a fair trial. We disagree on the basis that any cumulative effect was slight in comparison with the evidence of guilt which was properly admitted. The claimed errors did not contribute to the conviction. *State v. Thurman*, 84 N.M. 5, 498 P.2d 697 (Ct.App.1972).

For the foregoing reasons the Court of Appeals is reversed and the trial court affirmed as to the warrantless searches of the automobile at the police station. We further find, however, that suppressing said evidence obtained and deleting it from the affidavit for the issuance of a search warrant of the defendant's home would not have led to the denial of the issuance of the search warrant. The claimed errors, therefore, not being prejudicial, and the defendant having been accorded a fair trial, the judgment of conviction is affirmed.

PAYNE and FEDERICI, JJ., concur.