674 P.2d 1127

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Bobby W. COX, Defendant-Appellee.**

No. 7272.

Court of Appeals of New Mexico.

Dec. 8, 1983.

Paul Bardacke, Atty. Gen., Ida M. Lujan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Janet E. Clow, Chief Public Defender, J. Thomas Sullivan, Appellate Defender, Santa Fe, for defendant-appellee.

OPINION

BIVINS, Judge.

Defendant was charged with arson of his own home to collect insurance, contrary to NMSA 1978, § 30–17–5(A)(3). Following a pretrial evidentiary hearing on defendant's motion to suppress evidence, the trial court entered its order suppressing all evidence seized by the investigating officers. The State appeals from that order. Issues raised in the docketing statement

and not briefed are deemed abandoned. *State v. Chavez*, 98 N.M. 61, 644 P.2d 1050 (Ct.App.1982).

The issue on appeal is whether the taking of certain evidence from the burned premises during a warrantless search constituted government action in violation of the Fourth Amendment as opposed to private action which would allow use of the evidence obtained in the criminal prosecution of defendant. We hold that the participation by the police and fire chief in conjunction with the private insurance investigator was sufficient to make the joint operation a government action involving Fourth Amendment guarantees. In doing so, we affirm the trial court.

## FACTS

A fire at defendant's residence in Ruidoso was reported at approximately 4:00 a.m. on December 14, 1982. It was extinguished by 6:00 to 6:30 a.m. the same day. Detective Gonzalo Cordova of the Ruidoso Police Department, with several members of the fire department, including Fire Chief Reynolds, went to the premises around noon on December 14. Cordova suspected arson but had no one in mind. Several samples of carpet and charred wood were taken from the house and sent to the laboratory to determine if they contained flammable substance.

On December 15, Sergeant Lovelace of the police department went to the scene of the fire. He did not enter the burned ruins but did seize as evidence a milk carton, because it smelled like "old gasoline." Lovelace saw the carton on the south side of the property. When he went to defendant's home, Lovelace suspected arson, because he had been told by the fire chief and the insurance agent that "it might be arson." On December 15, Lovelace placed a "Do not enter" sign on the house.

Bill Hunter was engaged by Farmers' Insurance to determine the "cause and origin" of the fire. We assume this insurance company provided coverage on the house. Hunter and his assistant went to the premises on December 17, but did not take samples.

On December 18, Hunter returned to the scene with Fire Chief Reynolds and Lovelace. According to Lovelace, Hunter invited him to go to the scene and assist with the investigation. Hunter denied that he contacted Lovelace; however, his report to the insurance company reflects that Lovelace assisted him in the investigation.

While at the scene on December 18, Lovelace examined a five-gallon oil can which he found on the lot. Later when Hunter showed Lovelace marks on the floor and said it would take 3 to 4 gallons of accelerant to start the fire, Lovelace returned and discovered that the oil can smelled like gasoline. He seized the can as evidence. On the same day three samples of wood products were taken from various areas in the house. The trial court summarized the manner in which this was done at the conclusion of the hearing: "Chief [Reynolds] cut the samples, gave them to Mr. Hunter, who containerized them, and gave them to Mr. Lovelace, a sergeant for the Ruidoso Police Department." Both sides agreed to this characterization of the testimony. The samples were sent to the State Fire Marshal's laboratory, but because it was "down", the samples were then forwarded to a private laboratory.

At no time did the officers obtain a search warrant.

The State separates the evidence seized between December 14 and 18 into three categories. The first category includes the samples of burned carpeting and charred wood taken by Cordova on December 14, and the milk carton and oil can seized by Lovelace on December 15 and 18, respectively. The second category consists of the three samples which were cut at Hunter's direction and turned over to Lovelace on December 18. The third category consists of 38 photographs taken at the scene by Hunter. The trial court did not suppress the photographs. The State does not challenge the suppression of the first category. Thus, we need concern ourselves only with the second category of evidence seized.

## DISCUSSION

In *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Supreme Court of the United States concluded:

In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches. Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime. (Citations omitted.)

In *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), the Supreme Court held that the protection afforded by the Fourth Amendment against unlawful searches and seizures applies to government actions, and consequently evidence secured by private searches need not be excluded. This rule has been applied by the New Mexico appellate courts. In *State v. Doe,* 93 N.M. 143, 597 P.2d 1183 (Ct.App.1979), we said: "The Fourth Amendment prohibition against unreasonable searches and seizures was designed to protect people from government searches and did not apply to the acts of private individuals." *Id.* at 145, 597 P.2d 1183 (citations omitted). Therefore, if the taking of the three samples on December 18 was truly the act of a private individual, herein Mr. Hunter, and not the act of the State, those items could be used in the criminal prosecution of defendant.

After laying out very thoughtful and carefully drawn findings of fact, the trial court concluded that defendant had sustained his burden of proving that Hunter became "an arm or agent of the law enforcement agency." That conclusion was based on findings that on December 18, Hunter, Fire Chief Reynolds and Lovelace entered the rubble, and took three samples cut by the fire chief from areas pointed out by Hunter. Lovelace then sent the samples to the State Fire Marshal's laboratory.

We need not decide whether the facts here support a finding that Hunter became the arm or agent of the police. The findings clearly support a conclusion of a joint venture which is sufficient in itself to uphold the trial court's order suppressing the evidence. *See Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App.1970).

In *Maciejack v. State,* Ind. 404 N.E.2d 7 (1980), the search of burned premises by the investigator for an insurance company was held not governed by the Fourth Amendment, even though representatives of the police and fire departments accompanied the investigator. In that case the police investigation had ended before the insurance company became involved. Unlike *Maciejack,* the facts in the case before us give rise to a clear inference that the police investigation was in progress when Lovelace went to the scene on December 18. The police had more than a passing interest in being there. In fact the police officer and the fire chief, as agents of the State, both actively participated in the investigation, lending support to a conclusion of joint endeavor.

1 LaFave, *Search and Seizure,* § 1.6 (1978), states, "And even when the physical act of searching is by a private person, it may generally be said that the search is still governmental action if ... the authorities have participated in the search in some way." *Id.* at 114. The Supreme Court in *Lustig v. United States,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949), reversed a conviction for counterfeiting in violation of 18 U.S.C. § 264 (1946 ed.) where a federal officer, although not present at the time of the initial entry, later joined the city police and participated in a critical examination of the evidence. The Court said:

It surely can make no difference whether a state officer turns up the evidence and hands it over to a federal agent for his

critical inspection with the view to its use in a federal prosecution, or the federal agent himself takes the articles out of a bag. It would trivialize law to base legal significance on such a differentiation. *Id.* at 78, 69 S.Ct. at 1374.

Similarly, it would make no difference whether Hunter, a private investigator, turned up the evidence and handed it over to Lovelace *for* his use, or whether Lovelace secured the samples himself. Further, here the samples were actually cut by the fire chief, who stood in the same shoes as the police officer. *See State v. Doe.*

We hold that where, as here, a law enforcement officer participates in a joint endeavor as part of an ongoing criminal investigation, the effect is the same as if he engaged in the undertaking as one exclusively his own. *See Byars v. United States,* 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927). As stated by the Court in *Maciejack,* "[A] governmental investigatory agency cannot do, through a private investigator, what it could not do itself." *Id.* at 10–11.

To insulate an illegal search by "tailing in" on an otherwise private investigation could, under the facts here, vitiate Fourth Amendment guarantees against unlawful searches and seizures. We decline to sanction such a result.

The order suppressing the evidence is affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.