2008-NMCA-069

185 P.3d 376

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**KATRINA G., a child, Defendant–
Appellant.**

No. 25,991.

Court of Appeals of New Mexico.

April 4, 2008.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

Silva and Grano Law Firm, David Silva, Las Vegas, NM, for Appellant.

## OPINION

SUTIN, Chief Judge.

{1} Two days before trial, Child filed a motion to suppress evidence obtained pursuant to a search warrant that did not contain a written authorization for a nighttime search of Child's home. Child sought no evidentiary hearing but instead sought a ruling based solely on the absence of the magistrate

judge's signed authorization for a nighttime search on the warrant.

{2} In a narrow holding, we determine that the motion was appropriately denied by the children's court. It became apparent when the motion was addressed on the first day of trial, after the jury was picked, that the State wanted the magistrate judge to testify. The State represented that the magistrate judge would testify that he knew the warrant was sought for a nighttime search and that he expected it to be executed in the nighttime. However, the magistrate judge was not available to testify at the trial. In the court's view, if the suppression issue was to be heard, an evidentiary hearing was necessary but could not occur at the trial. Child did not request or propose that some alternative, for example, a continuance, mistrial, or new trial if she was convicted, be chosen to provide for an evidentiary hearing to determine if the search based on the warrant violated the Fourth Amendment. Because Child prejudicially delayed the filing of the motion to suppress and did not request or propose a reasonable, practical alternative for an evidentiary hearing, Child was not denied her constitutional right to a hearing on her motion to suppress.

## BACKGROUND

{3} Just after 10:00 p.m. police responded to a call of a shooting at the residence of Katrina G. (Child), then thirteen years old. Police went inside the house, where they observed Child holding a blood-soaked towel to the head of Victim, Adrian U., also thirteen years old. The officers also observed a small caliber firearm, a spent casing, and blood in plain view on the living room floor near Child and Victim. Medical personnel took Victim to the hospital, where he died the next morning from a gunshot wound to his head. Linda M., Child's mother (Mother), told the officers that Victim shot himself. Mother, Child, and all of the others present at the scene were taken to the police station for questioning. Only police and medical personnel remained at the scene. Based on the statements taken at the police station, the children's court found that Child had shot Victim.

{4} In connection with the investigation and as the questioning progressed that night, Sergeant Romero prepared a search warrant affidavit and went to the residence of a magistrate judge to obtain a warrant to search Child's residence. The magistrate judge signed the warrant at his home at approximately 1:50 a.m. The warrant, which appears, for the most part, to be in the form approved by our Supreme Court, see Rule 9–214 NMRA, stated: "**YOU ARE HEREBY COMMANDED** to search forthwith the person or place in the Affidavit between the hours of 6:00 a.m. and 10:00 p.m., unless I have specifically authorized a nighttime search[.]" Below the magistrate judge's signature, the warrant stated: "**AUTHORIZATION FOR NIGHTTIME SEARCH**" followed by "I further find that reasonable cause has been shown for nighttime execution of this Warrant. I authorize execution of this Warrant at any time of the day or night for the following[.]" At this point the page ends, as shown. There is no second page to the warrant, and the magistrate judge's signature does not appear under or specifically related to the nighttime authorization.

{5} The police executed the warrant starting at approximately 2:00 a.m. While the search warrant was executed, Child and her mother were still at the police station. The home had been under constant police surveillance from the time Victim had been removed by medical personnel and those present had been taken for questioning. The search produced a small caliber handgun and a spent shell casing.

{6} Child became the subject of a children's court case in which the State sought to have her adjudicated a delinquent child based on involuntary manslaughter. The petition was filed on January 18, 2005. Child was in detention at the time the petition was filed. As required under law, the time limit for commencing the adjudicatory hearing was therefore February 17, 2005. See Rule 10–226(A) NMRA. The adjudicatory hearing was set to commence on February 16, 2005. Child filed a motion on February 10, 2005, to disqualify the office of the district attorney for conflict of interest. Based on that mo-

tion, the State obtained an extension of time until April 19, 2005, to allow time to appoint a special prosecutor. This was the maximum extension that could be obtained from the children's court. *See* Rule 10–226(D). A further extension, through June 3, 2005, was obtained from the Supreme Court. *See* Rule 10–226(E). The adjudicatory hearing was then set for May 25, 2005.

{7} Early on, Child was given adequate opportunity to present a motion to suppress evidence. Child in fact took that opportunity, but the motion Child presented, that was timely, was not based on whether the search was unconstitutional as the result of an invalid warrant. It was not until May 23, 2005, two days before the date set for commencement of the adjudicatory hearing, that Child filed her motion to suppress the evidence seized in the home on the ground that the search was unconstitutional because the warrant did not expressly authorize a nighttime search.

{8} The parties and the court discussed the motion to suppress during the adjudicatory hearing on May 25. In the discussion, it became clear that the State believed that it had been prejudiced by the late filing of the motion. The State argued that the magistrate judge knew that the search would be conducted immediately that night, and that he implicitly authorized a nighttime search and would have signed the nighttime authorization had he been asked to do so, and that the magistrate judge's testimony was required on the issue. The court expressed its view that the State was prejudiced by the late filing of the motion to suppress.

{9} Based on the State's argument, the court determined that an evidentiary hearing was necessary, unless Child agreed to accept what the State was representing in regard to the magistrate judge's intentions. The court noted that Child was required to request an evidentiary hearing if she wanted one. The court was clearly concerned about Child's counsel's failure to timely move to suppress on the issue of the warrant. The court also expressed concerns that a jury was already picked and that jeopardy had attached, and stated too that Child's counsel had put the prosecution in a predicament by raising the

issue so late. *See In re Ruben O.*, 120 N.M. 160, 163, 899 P.2d 603, 606 (Ct.App.1995) (indicating that the time limits for holding adjudicatory hearings are jurisdictional). The court orally ruled that the motion was untimely under Rule 5–212 NMRA and Rule 10–103.1 NMRA. At no time during the discussion of the motion to suppress did Child request an evidentiary hearing or agree to have the motion heard based on the State's representations as to what the magistrate intended. The court entered an order denying the motion to suppress on the ground it was untimely under Rule 5–601 NMRA and Rule 10–103.1. We will discuss Rules 5–212, 5–601, and 10–103.1 shortly.

{10} The jury concluded that Child committed involuntary manslaughter, after which the children's court adjudicated her a delinquent child. Child appealed that adjudication to this Court. While the appeal was pending on this Court's summary calendar, we remanded for an evidentiary hearing and findings of fact relating to various issues. In particular, we asked the district court to address:

> [T]he historical facts surrounding the apparent inability of the [children's] court either to accommodate Child's motion to suppress, or to evaluate the validity of the nighttime search upon Child's repeated objections at trial, as well as for the purpose of obtaining written findings on the historical facts which bear upon the viability of the various legal theories surrounding the propriety of the nighttime search, and the effect of any violation of the applicable rules and Child's constitutional rights on the admissibility of the evidence obtained in the course of the search.

{11} On remand, after conducting an evidentiary hearing, the children's court entered findings of fact and conclusions of law relating to the issuance of the warrant, as well as the timeliness of the motion to suppress. Specifically, the court entered the following finding in regard to the motion to suppress:

> On Monday, May 23, 2005, counsel for the Child filed two Motions in Limine, one of which was a motion to suppress all evidence seized pursuant to the warrant for the lack of nighttime search authoriza-

tion. This motion was filed on this date despite the fact that counsel for the [C]hild had been provided with a copy of the search warrant that did not specifically authorize a nighttime search in discovery shortly after counsel for the [C]hild's entry of appearance. Counsel for the [C]hild knew, or at the very least, should have known about this issue yet he either deliberately waited until the last minute to file this motion or was inadequately prepared.

The court also entered a finding of fact that "[t]he [c]ourt was not able to hear the Child's [m]otion and reset the adjudicatory hearing within the time limits imposed by the Supreme Court in its order granting an extension of time to commence the adjudicatory hearing." Further, the court entered findings in accord with its prior oral ruling on May 25, 2005, that the motion to suppress was untimely pursuant to Rules 5–212 and 10–103.1. The court also entered the following conclusions of law pertinent to the timeliness issue:

6. The [c]hildren's [c]ourt could not adequately evaluate the validity of the nighttime search based on the evidence presented at trial, because different testimony, witnesses and evidence was required to decide the Child's motion than was presented at trial. A separate evidentiary hearing was necessary to resolve the Child's motion.

7. The Child's [m]otion to [s]uppress was untimely filed. Notwithstanding the timeliness issue, a determination of the legality of the search was not necessary for the jury's determination of whether the [C]hild had committed the delinquent act of involuntary manslaughter.

{12} On appeal, Child argues that she did not lose the right to object to the admission of evidence on Fourth Amendment grounds by failing to file a timely pre-adjudicatory motion to suppress, citing as authority *State v. Doe*, 93 N.M. 143, 145, 597 P.2d 1183, 1185 (Ct.App.1979). She also argues that the court erred in concluding that the nighttime search was valid. The State counters that we should affirm the court's denial of the motion to suppress because the motion was untimely based on Rule 10–103.1(A). The

State also argues that there was no illegal search justifying suppression.

{13} Although Child sought a grant of her motion as a matter of law based solely on the absence of the required magistrate judge authorization on the warrant for a nighttime search, it became evident to the children's court that an evidentiary hearing was required in order for it to decide the motion. Child did not, in our view, have a constitutional right, under the circumstances, to a hearing on the motion based solely on the documentary evidence of the warrant with no evidentiary hearing to obtain the testimony of the magistrate judge. Thus, for the reasons that follow, we hold that the court did not err in denying Child's motion to suppress and affirm the children's court adjudication that Child committed the delinquent act of involuntary manslaughter.

## DISCUSSION

### The Rules Relating to Motions

{14} We first set out the pertinent rules and case law on the issue of the timeliness of the motion to suppress. The applicable children's court rule is Rule 10–103.1(A). This rule addresses "[a]ll motions, except motions made during trial, or as may be permitted by the court." Rule 10–103.1(A). The rule states that "[a]ll pre-adjudicatory motions shall be filed at least ten (10) days prior to any adjudicatory hearing except by leave of court." *Id.*

{15} Turning to the Rules of Criminal Procedure, Rule 5–601(B) permits a defendant to raise "[a]ny ... objection or request" before trial by motion "which is capable of determination without a trial on the merits." Rule 5–601(C) requires certain objections to be raised before trial, but objections to evidence are not included. Rule 5–601(D), however, pertains to "[a]ll motions, unless otherwise provided by these rules or unless otherwise ordered by the court," and requires that the motion "shall be made at the arraignment or within ninety (90) days thereafter, unless upon good cause shown the court waives the time requirement." Rule 5–601(E) states that "[i]f an evidentiary hearing is required, the motion shall be accompanied by a separate written request for an evidentiary hearing[.]"

{16} The Rules of Criminal Procedure contain a rule specifically relating to motions to suppress evidence. Rule 5–212(B) states that "[a] person aggrieved by ... evidence may move to suppress such evidence." The motion "shall be made within twenty (20) days after the entry of a plea, unless, upon good cause shown, the trial court waives the time requirement of this rule." Rule 5–212(C).

### The Motion to Suppress, Though Perhaps Timely, Was Nevertheless Properly Denied

#### A. The Rules Require an Evidentiary Hearing if it is Necessary

{17} It seems clear that, as a general rule, under the children's court rules and the Rules of Criminal Procedure, a motion to suppress evidence is not required to be made before trial and may be made at trial. This is the intent, if not the holding, in *Doe*, in which this Court held that "failure to file a pre-adjudicatory motion to suppress the evidence did not deny [the child] the right to object to the admission of the evidence at trial." 93 N.M. at 145, 597 P.2d at 1185. We see nothing in Rule 10–103.1(A) that requires us to conclude that a motion to suppress must always be filed before trial. We conclude that Rules 5–601 and 5–212 are consistent and, read together, like Rule 10–103.1(A), do not require us to conclude that a motion to suppress must always be filed before trial. We note that the Committee Commentary to Rule 5–601 states that "[Subsection] C of this rule does not include motions to suppress evidence as a matter which must be raised prior to trial." In addition, the Committee Commentary to Rule 5–212 states that "[t]he New Mexico Rules of Criminal Procedure do not require [a] motion objecting to illegally seized evidence prior to trial.... If a pretrial motion to suppress is made under this rule, it must be filed within twenty (20) days after the entry of a plea." This, however, does not resolve the question of whether the children's court erred in denying Child's motion to suppress.

{18} In *State v. Urban*, 108 N.M. 744, 779 P.2d 121 (Ct.App.1989), this Court analyzed whether a pretrial motion to dismiss an indictment on Sixth Amendment speedy trial and Fourteenth Amendment due process grounds was timely, and also whether, if timely, was nevertheless appropriately denied by the district court. *Id.* at 745, 779 P.2d at 122. We concluded that the motion was timely because the defendant's motion raised objections that were directed to the initiation of the prosecution and therefore did not have to be raised within the time limits of Rule 5–601(D). *See Urban*, 108 N.M. at 746–47, 779 P.2d at 123–24. However, we interpreted Rule 5–601(E) to apply to all motions for which an evidentiary hearing is required, including the motion filed by the defendant. *Urban*, 108 N.M. at 747, 779 P.2d at 124.

{19} In *Urban*, on the morning of trial the defendant orally requested further hearing of his claims during argument on his motion to dismiss. *Id.* at 745–46, 779 P.2d at 122–23. The court denied his request. *Id.* at 746, 779 P.2d at 123. Because the defendant "failed to make an adequate showing that an evidentiary hearing was necessary" as required under Rule 5–601(E), we held that the district court did not err in denying the motion. *See Urban*, 108 N.M. at 747, 748–49, 779 P.2d at 124, 125–26.

{20} We explained in *Urban* that Subsection (E) "establishes an orderly procedure for resolving issues that need to be resolved prior to trial but for which an evidentiary hearing is appropriate." *Id.* at 747, 779 P.2d at 124. The rule contemplates that the party who files the motion requests a hearing, and the court then determines whether an evidentiary hearing is necessary. *Id.* Thus, the trial court is to determine "initially whether an evidentiary hearing is required." *Id.* Although, in *Urban*, we indicated that the court was entitled to deny the motion if the movant failed to show the need for such a hearing, we think that the analysis in *Urban* may be applied to uphold the children's court's denial of Child's motion under the circumstances in the present case.

{21} Here, as we have indicated, Child moved to suppress two days before trial, leaving no time for an evidentiary hearing before or during trial. Child did not request an evidentiary hearing and may not have wanted one, since Child sought a determina-

tion from the court as a matter of law that the warrant was invalid because it did not bear the nighttime search signature authorization of the magistrate judge. But it became apparent to the court from the State's argument about the need for the magistrate judge's testimony that an evidentiary hearing was not only appropriate but would be required. The lack of time or opportunity for an evidentiary hearing before and during trial existed because of the deadline to hold the adjudicatory hearing and because of Child's long delay in asserting the motion to suppress. Under these circumstances, we cannot agree with Child that she had a constitutional right to have her motion decided without an evidentiary hearing or despite the time predicament of the court caused by Child. *See State v. Aragon*, 89 N.M. 91, 95, 547 P.2d 574, 578 (Ct.App.1976) (holding that the defendant's failure to file a timely motion to suppress with resulting prejudice to the State entitled the State to a mistrial because "it would be contrary to the ends of public justice to carry the first trial to a final verdict"), *overruled on other grounds, State v. Rickerson*, 95 N.M. 666, 625 P.2d 1183 (1981).

{22} We note that in *State v. Alberico*, 116 N.M. 178, 180 n. 1, 861 P.2d 219, 221 n. 1 (Ct.App.1991), *rev'd on other grounds*, 116 N.M. 156, 861 P.2d 192, we suggested that a court might have options to keep a motion to suppress alive even in circumstances similar to those in the present case. In *Alberico*, we suggested that a court might declare a mistrial, or might allow the trial to proceed to verdict and, if the defendant is convicted, "conduct a hearing to determine whether the evidence was inadmissible and a new trial therefore required." *Id.* As to the mistrial route, we indicated that this procedure "risks a later determination that the declaration of mistrial, particularly if made over objection by [the] defendant, was unnecessary and therefore later retrial is barred by double jeopardy principles." *Id.* By noting *Alberico*, we do not intend to indicate that the footnoted discussion of alternatives sets any particular precedent in New Mexico law. However, even were we to assume that the *Alberico* discussion was applicable to the present case, we will not address whether the children's court might or should have considered alter-

natives such as those suggested in *Alberico*, for two reasons. First, Child did not raise *Alberico*, request an evidentiary hearing, ask for a continuance of the trial, or discuss any specific alternative. Second, Child did not argue in the children's court that the court *sua sponte* was required to look for alternatives beyond determining whether the evidentiary hearing could take place during the trial. Nor does Child argue this on appeal.

## B. An Evidentiary Hearing Was Needed

{23} Rule 5–211(B) NMRA states:
**Contents.** A search warrant shall be executed by a full-time salaried state or county law enforcement officer, a municipal police officer, a campus security officer, an Indian tribal or pueblo law enforcement officer or a civil officer of the United States authorized to enforce or assist in enforcing any federal law. The warrant shall contain or have attached the sworn written statement of facts showing probable cause for its issuance and the name of any person whose sworn written statement has been taken in support of the warrant. A search warrant shall direct that it be served between the hours of 6:00 a.m. and 10:00 p.m., according to local time, unless the issuing judge, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at any time.

An obvious purpose of this rule is to assure that a nighttime search occurs only upon the exercise of a neutral, detached magistrate judge's independent evaluation and discretion as to whether reasonable cause exists for the search. *See State v. Hausler*, 101 N.M. 143, 144, 679 P.2d 811, 812 (1984) ("The Court of Appeals in *Dalrymple* properly held that, absent language in the warrant authorizing a nighttime search, it was impossible to determine whether the magistrate exercised the discretion vested in him to allow a nighttime search."); *State v. Garcia*, 2002–NMCA–050, ¶ 15, 132 N.M. 180, 45 P.3d 900 (holding the failure to establish reasonable cause for issuance of a nighttime search warrant pursuant to Rule 6–208(B) NMRA made the search unreasonable and therefore unconstitutional); *State v. Dalrymple*, 80 N.M. 492, 494, 458

P.2d 96, 98 (Ct.App.1969) (holding under a statute materially analogous to Rule 5–211(B) that "whether a search may be made at any time … is clearly a matter to be determined by the issuing magistrate … judge and evidenced by the language of the warrant which is issued"). Nighttime search authorization for search of a residence is required so that a neutral magistrate judge can assess the need for the search weighed against the fear and security concerns generated by a nighttime search. *See Garcia,* 2002–NMCA–050, ¶ 11, 132 N.M. 180, 45 P.3d 900 (citing authority indicating that nighttime searches are disfavored because of threat to privacy, violation of the sanctity of the home, and endangerment to police and those asleep in the home). Thus, the procedure codified by Rule 5–211(B) is "of such constitutional import that failure to strictly comply with [it] requires suppression of the evidence obtained." *State v. Malloy,* 2001–NMCA–067, ¶ 9, 131 N.M. 222, 34 P.3d 611.

{24} Nothing in our jurisprudence, however, precludes in all cases the after-the-fact testimony of a magistrate judge to support the reasonableness of a nighttime search by showing that the judge actually performed the required scrutiny and evaluation and authorized the nighttime search although the warrant itself failed to expressly show the authorization. We see no reason to adopt such a bright-line preclusive rule. The present case is a good example why we should not do so. We think it best to approach the issue on a case-by-case basis.

{25} In this case, a neutral magistrate judge approved the nighttime search, as evidenced by his testimony obtained after our remand to the children's court. According to a factual finding of the court:

[The magistrate judge] specifically remember[ed] asking Sergeant Romero when the warrant was going to be executed and he was told that officers were waiting at the residence for the judge to approve the warrant so they could search the residence. [The magistrate judge] expected and anticipated the warrant was going to be executed between the hours of 10:00 p.m. and 6:00 a.m. since this is when he

was contacted for authorization for the search.

The court concluded that:

The Search Warrant signed in this cause by [the magistrate judge] lawfully authorized a nighttime search despite the fact [he] did not specifically authorize a nighttime search. Irrespective of the [j]udge's signature not appearing on the signature line explicitly authorizing a nighttime search, the [j]udge implicitly authorized the search to begin during the nighttime hours. None of the factors normally associated with the policies against execution of a nighttime warrant were present in this case.

{26} Additionally, the warrant affidavit stated facts sufficient to make a nighttime search constitutionally reasonable, as well as probable cause for the search generally. The warrant affidavit stated that a shooting had occurred, police responded to the residence, and the officers who first arrived saw Victim with a serious injury to his head. It stated that the officers were originally told that Victim shot himself, but were later told that Child accidentally shot Victim. The affidavit further stated that the juveniles present at the residence were at the police department waiting for further investigation, to include the owner of the residence, Mother. It also listed the evidence that the sergeant and other officers had seen when they first arrived at the residence, including the handgun, the shell casing, and blood on the floor. These statements established probable cause for the search and reasonable cause for a nighttime search.

{27} Furthermore, given that the shooting incident occurred at night, that the police were called at night to assist and investigate, and that none of the occupants were present at the time of the search, we see no basis on which to hold that the immediate nighttime search was unreasonable. There existed no issues of privacy expectation, security, or danger. *See Garcia,* 2002–NMCA–050, ¶ 11, 132 N.M. 180, 45 P.3d 900 (discussing the concerns of the great threat to privacy, the violation of the sanctity of the home, the endangerment to police and slumbering citi-

zens as reasons disfavoring nighttime searches). As this Court stated in *Garcia*,

> [T]he nighttime search ... was conducted upon people who were observed to be active in the nighttime. It was based on probable and reasonable cause that had just recently been developed, again in the nighttime. It bears emphasis that this is not a case in which the police developed probable cause during business hours and then waited until nighttime, when they believe people will be asleep, to execute the warrant. The intrusiveness of the nighttime search ... is considerably lessened because of these circumstances, making the showing of necessity sufficient under constitutional scrutiny.

*Id.* ¶ 19. Under the circumstances here, we cannot see how delaying the search of the residence for four hours, from 2:00 a.m. to 6:00 a.m., would have been any more constitutionally reasonable than searching the residence immediately as was done. Finally, none of the constitutional policies against a nighttime search are implicated here. The nighttime search did not "encroach upon either the special privacy interests or the public safety concerns that underlie the nighttime search prohibition." *Id.* ¶ 16 (internal quotation marks and citation omitted).

{28} Based on the foregoing analyses, in our view the children's court was not required to grant Child's motion to suppress based solely on the face of the warrant. It was reasonable for the court to determine that an evidentiary hearing was needed to adjudicate the suppression issue.

## CONCLUSION

{29} We affirm. The children's court properly denied Child's motion to suppress. As indicated by the evidence obtained at the evidentiary hearing later held after remand from this Court, an evidentiary hearing was necessary to decide Child's motion to suppress. However, Child's motion to suppress was filed too late for a pretrial or in-trial adjudication. Moreover, Child did not request the court to follow any procedure pursuant to which an evidentiary hearing could be held, nor did Child even request an evidentiary hearing. We see no constitutional or other basis on which to hold that the children's court erred in denying Child's motion to suppress. We therefore affirm the court's adjudication that Child committed the delinquent act of involuntary manslaughter.

{30} **IT IS SO ORDERED.**

WE CONCUR: RODERICK T. KENNEDY and MICHAEL E. VIGIL, Judges.