## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-031

Filing Date: August 20, 2012

Docket No. 32,885

CITY OF SANTA FE,

     Plaintiff-Appellant,

v.

JULIO J. MARQUEZ,

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Eugene I. Zamora
R. Alfred Walker
Marcos D. Martinez
Santa Fe, NM

for Appellant

Trace L. Rabern, Attorney and Counselor at Law, L.L.C.
Trace L. Rabern
Santa Fe, NM

for Appellee

## OPINION

**SERNA, Justice.**

**{1}** The City of Santa Fe (City) charged Julio Marquez with two violations of the Santa Fe City Code (SFCC), including Operating a Motor Vehicle Under the Influence of Intoxicating Liquor or Drugs (DWI). After the City rested its case at trial, the district court sua sponte ruled that the arresting officer's DWI investigation was unlawful and on that basis entered an order suppressing all evidence from the investigation and therefore dismissing the DWI charge against Marquez. The City now brings this direct appeal pursuant to NMSA

1

1978, Section 35-15-11 (1959) (providing municipalities with "the right to appeal . . . to the supreme court from any decision of the district court in every case brought for the violation of an ordinance of said municipality"), *invalidated on other grounds by City of Las Cruces v. Sanchez*, 2007-NMSC-042, ¶¶ 20-21, 142 N.M. 243, 164 P.3d 942 (holding that Section 35-15-11 confers upon municipalities the right to appeal a final judgment to the district court unless barred by double jeopardy protections and that the statute's language limiting appeals to only two circumstances was unconstitutional).

**{2}** Under our statutes, constitutional double jeopardy principles bar the City from retrying Marquez and therefore this appeal must be dismissed. We nonetheless write to cast light on the unintended consequences that can follow (and, in this case, did follow) from waiting until trial to consider suppression issues; to clarify that our Rules of Criminal Procedure require a motion to suppress evidence to be made within twenty days of entry of a defendant's plea, absent good cause shown; and to expand the applicable rule to require district courts to adjudicate the suppression of possibly illegally obtained evidence prior to trial, unless good cause exists for delaying such rulings until trial.

## I. BACKGROUND

**{3}** Julio Marquez was arrested on October 22, 2009 shortly after he made a wide right turn at a street intersection in Santa Fe without slowing down or stopping at the stop sign. A Santa Fe Police Department officer, Michael Rute, witnessed the infraction and stopped Marquez to cite him. After observing indicia of intoxication, Officer Rute administered field sobriety tests and ultimately arrested Marquez for DWI. Marquez was later found to have a blood-alcohol concentration of 0.09 percent.

**{4}** The City charged Marquez with Careless Driving, a violation of SFCC Uniform Traffic Code 2004 Section 12-6-12.4 (2009), and with simple (non-aggravated) DWI, a violation of SFCC Uniform Traffic Code 2004 Section 12-6-12.1 (2009), *available at* http://www.santafenm.gov/DocumentView.aspx?DID=4191. The City's case against Marquez went to trial in municipal court, and Marquez was found guilty of both offenses. Marquez timely appealed to the district court for a de novo trial.

**{5}** A bench trial before the district court commenced in October 2010. Officer Rute testified that he was driving southbound on Camino Alire just after midnight on October 22, 2009 when he saw a Pontiac Aztek traveling westbound on Alto Street. The Pontiac, according to Officer Rute, failed to make a proper stop before turning right from Alto Street onto Camino Alire. Officer Rute testified that he had to swerve to avoid a crash with the Pontiac as it made a wide turn, that the Pontiac then pulled immediately in front of another vehicle, and that as a result he stopped the driver of the Pontiac because he "felt that the vehicle was driving in a careless manner."

**{6}** Officer Rute further testified that after he made contact with the driver, soon identified by his driver's license as Marquez, Marquez "started to fumble" for his

registration and insurance papers. After engaging Marquez in conversation, Officer Rute observed "that he had slurry speech, he had [an] odor of intoxicating liquor emanating from his breath when he spoke, and his eyes appeared to be red and bloodshot." Officer Rute asked Marquez if he had consumed any alcohol, and after initially denying that he had done so Marquez responded that he had drunk one glass of wine. Next Officer Rute directed Marquez out of his vehicle in order to administer field sobriety tests. As Officer Rute testified, in conducting the tests he observed a sufficient number of the clues prescribed as indicators of impairment to conclude that Marquez was impaired.

{7}     After Marquez completed the field sobriety tests and Officer Rute determined Marquez to be impaired, Officer Rute arrested Marquez for DWI. Because Marquez was unable to provide a breath sample due to asthma, a blood draw was administered. Marquez's blood sample was analyzed and indicated a blood-alcohol concentration of 0.09 percent, just above the 0.08 percent concentration treated as per se proof of impairment. *See* SFCC 2004 § 12-6-12.1(B)(1).

{8}     The parties agreed to a two-month continuance of the trial following interruption of Officer Rute's testimony to accommodate an out-of-town witness (the blood-test technician), after which Officer Rute became unavailable due to his treatment for a serious illness. When Marquez's trial resumed in January 2011, Marquez's attorney began a cross-examination of Officer Rute but stopped his questioning after Officer Rute said that he was not feeling well and could not remember his prior direct testimony. The City did not redirect or call any other witnesses and rested its case.

{9}     Officer Rute's patrol car was equipped with a video camera which had recorded the entire stop and arrest, and this video recording was previously admitted into evidence, with no objection from Marquez. The district court also admitted the results of Marquez's blood-alcohol test. Although Marquez objected to admission of the test results, he did so only on the grounds that the test kit might have expired and that the toxicologist who had testified about the test process and interpreted its results had not performed the test and was not properly qualified. Marquez did not assert at any point prior to the close of the City's case that Officer Rute lacked reasonable suspicion to initiate the DWI investigation, nor did Marquez move to suppress evidence flowing from that investigation. At the close of the City's case, Marquez asked the district court to review the video recording of the traffic stop. After the court did so, Marquez moved for a directed verdict on the DWI charge, on the grounds that he was unable to cross-examine Officer Rute and that the video contradicted Officer Rute's portrayal of Marquez's driving, speech, and behavior.

{10}     The district court concluded that the video did not show Marquez's car almost hitting Officer Rute's patrol car or any other vehicle, contrary to the officer's testimony; that far from slurring his words, Marquez spoke with "perfect enunciation," again contradicting the officer's testimony; that Officer Rute was belligerent while Marquez was cooperative; that in the court's assessment Officer Rute simply took offense to Marquez having rolled through the intersection without stopping and had a "preconceived notion" about Marquez thereafter;

3

that Marquez did not fumble for his papers; that when Marquez exited his car, he was not swaying; and that Marquez's admission to consuming a single glass of wine did not provide Officer Rute with reasonable suspicion necessary to expand the traffic stop into a DWI investigation. Accordingly, the court determined it would suppress all evidence from the DWI investigation and would enter an order dismissing the DWI charge, as well as upholding Marquez's conviction on the Careless Driving charge.

{11} The district court thereafter entered a written order, styled as a "Judgment, Sentence and Order of Remand," which adjudged Marquez guilty of Careless Driving and imposed a suspended jail sentence and court costs. The order also provided that after "having heard testimony, taken evidence, [and] considered the arguments of counsel," the court determined that Officer Rute "did not have reasonable suspicion, based on the odor of alcohol and admission to drinking, to expand the scope of the traffic stop to an investigation of [DWI]." On that basis, the court ordered that "all evidence of [DWI] developed as a result of the investigation following the traffic stop for Careless Driving is hereby suppressed, and the charge of [DWI] is hereby dismissed with prejudice." The district court's order did not explicitly rule on, or otherwise make any reference to, Marquez's motion for a directed verdict. The City timely filed this direct appeal of the district court's order.

## II.  DISCUSSION

{12} Double jeopardy bars the City from retrying Marquez on the DWI charge, and therefore we must dismiss the City's appeal. Here, jeopardy had attached because the City presented evidence against Marquez to the district court. *See State v. Nunez*, 2000-NMSC-013, ¶ 28, 129 N.M. 63, 2 P.3d 264 ("in a nonjury trial, . . . jeopardy attaches when the court begins to hear at least some evidence on behalf of the state.").

{13} This result follows directly from our holding in *State v. Lizzol*, 2007-NMSC-024, 141 N.M. 705, 160 P.3d 886. In *Lizzol*, a police officer pulled over the defendant motorist for driving without taillights in the early morning hours. *Id.* ¶ 2. The officer "[o]bserv[ed] signs of intoxication, " administered field sobriety tests, and arrested the defendant for driving under the influence of intoxicating liquor. *Id.* At trial in metropolitan court, the state attempted to lay the foundation for admission of the card containing the breath alcohol test (BAT) results through the testimony of the arresting officer. *Id*. ¶¶ 3-4. The metropolitan court found that the officer lacked sufficient knowledge about the test machine's certification to provide the proper foundation for admitting the BAT card. After the state rested its case, the court entered a written order suppressing the BAT card "'because the officer is found not to be [a] qualified individual to testify to the certification of the breath machine . . . [and] the case is therefore dismissed.'" *Id*. ¶ 4 (internal quotation marks and citation omitted).

{14} The state appealed to the district court, which determined that the metropolitan court erred in excluding the BAT card and remanded the case for a new trial. *Id.* ¶ 5. The defendant then appealed to the Court of Appeals, which rejected his argument that double jeopardy barred the state from challenging the metropolitan court's evidentiary ruling but

4

went on to determine that the metropolitan court had correctly excluded the BAT card. *Id.* ¶ 5 and n.1.

**{15}** This Court "d[id] not reach the issue of whether the judge's evidentiary ruling . . . was in error." *Id.* ¶¶ 1, 29. Rather, we held that because the metropolitan court's order excluding the BAT card led to the defendant's acquittal based on that court's determination of "insufficient evidence to proceed" with trial, "the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bar[red] the state's appeal of the evidentiary ruling." *Id.* ¶ 29. As we explained:

> (1) the State is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial court's ruling; (2) whether a defendant was acquitted does not depend on the trial court's characterization of its ruling; (3) an acquittal results when, after making an erroneous evidentiary ruling, the trial court concludes that the evidence is insufficient to proceed; (4) an acquittal does not result when, notwithstanding the defendant's possible culpability, the trial court determines the defendant's prosecution is constitutionally or statutorily prohibited; (5) a defendant may not be retried after the conviction is set aside because of insufficient evidence; (6) a defendant may be retried if the conviction was set aside because of trial error, including the situation when the trial court wrongly admitted incriminating evidence or wrongly excluded exculpatory evidence.

*Id.* ¶ 15.

**{16}** As in *Lizzol*, the district court's evidentiary ruling here, although not styled as an order of acquittal, nonetheless functioned as an acquittal. "[W]hether a defendant was acquitted depends on whether the trial court's ruling, however labeled, correctly or incorrectly resolved some or all of the factual elements of the crime." *Id.* ¶ 7. Here, by making the suppression ruling after the City rested its case and simultaneously dismissing the DWI charge, the district court effectively determined that the City lacked sufficient evidence to meet its burden of proof. *See id.* ¶ 24.

**{17}** In *Lizzol*, this Court distinguished and modified a prior decision, *County of Los Alamos v. Tapia*, 109 N.M. 736, 790 P.2d 1017 (1990). In *Tapia*, a police officer observed the defendant motorist running through a stop sign and driving with a broken tail light near the boundary line between Los Alamos County and Santa Fe County. *Id.* at 737-38, 790 P.2d at 1018-19. The officer pursued the defendant and stopped him in Santa Fe County, and after administering field sobriety tests arrested him for driving while intoxicated. *Id.* at 738, 790 P.2d at 1019. The defendant was convicted on that charge in a trial held in Los Alamos Municipal Court, and thereafter appealed to the district court for a trial de novo. At the district court trial, during the arresting officer's testimony the defendant moved to suppress all evidence resulting from the arrest on the ground that the arrest was unlawful under the Fresh Pursuit Act. *Id.* After hearing argument from the parties, the district court

entered an order finding the arrest to be illegal and on that basis suppressing all resulting evidence and dismissing the charges against the defendant. *Id.* The county appealed, and the defendant moved to dismiss the appeal on double jeopardy grounds, a motion that the Court of Appeals granted. *Id.* This Court reversed, determining that the district court's order of dismissal

> was in no sense a decision on the quantum of proof offered by the county, on its probative value, on the credibility of the evidence, or on any other question relating to the sufficiency of the county's case; it was purely and simply a ruling on the legality of defendant's arrest and the consequent admissibility *vel non* of the prosecution's evidence.

*Id.* at 739, 790 P.2d at 1020.

**{18}** In *Lizzol* we explained that the "real issue in *Tapia* was whether there was jurisdiction under the Fresh Pursuit Act to bring the defendant to trial in the first place." 2007-NMSC-024, ¶ 21. Therefore, "[t]he trial court in *Tapia* did not make an erroneous evidentiary ruling," but rather dismissed the charges against the defendant "based on an interpretation of a statute and [its ruling] was unrelated to a factual finding of guilt or innocence." *Id.* Although the district court in *Tapia* couched its ruling in terms of suppression, *see* 109 N.M. at 738, 790 P.2d at 1019, we noted in *Lizzol* that "[i]n *Tapia*, the evidence was not 'suppressed'; instead, the trial court simply ruled that the officer lacked jurisdiction under the Fresh Pursuit Act to make an arrest." 2007-NMSC-024, ¶ 28. Like the factual finding in *Lizzol* and unlike the jurisdictional determination in *Tapia*, the district court in the present appeal based its order of dismissal on an evidentiary ruling that directly related to Marquez's guilt or innocence. That is because in suppressing the evidence resulting from the DWI investigation after the City had rested its case and dismissing the DWI charge, the district court here implicitly held the evidence to be insufficient to support Marquez's conviction on the DWI charge.

**{19}** Although double jeopardy protections preclude our review of the merits of the district court's suppression order, we take the opportunity to discuss how the timing and scope of the order foreclosed any appeal by the City, and to both clarify and expand our procedural rules so that district courts going forward may avoid the apparently unintended results of this case.

**{20}** The district court premised its suppression ruling on disparities between Officer Rute's testimony about Marquez's appearance and behavior and the court's own assessment of the same based on the video recording of the traffic stop. Specifically, in the district court's view the video recording contradicted Officer Rute's testimony about Marquez's slurred speech, problems with motor control, and near-collision with Officer Rute's car or another vehicle prior to the traffic stop. Officer Rute had also testified that Marquez had the odor of alcohol on his breath and bloodshot eyes and that he admitted to having drunk alcohol earlier that evening. Given that these other indicia of intoxication could not be

6

confirmed by the video recording and relied solely on Officer Rute's testimony, which the court treated skeptically in light of the video recording, the court did not find reasonable suspicion for expanding the stop for careless driving into an investigation of DWI.

**{21}** The district court had initially permitted the City to introduce evidence from the DWI investigation, including testimony from Officer Rute, the video recording, and the results of Marquez's blood-alcohol test, all of which had been admitted either without any objection from Marquez or over objections unrelated to the legality of the officer's investigation. In fact, the district court had viewed the video recording and heard Officer Rute's direct testimony on the first day of Marquez's trial, months earlier. There is no indication in the record that any information came to light in January 2011 (when trial concluded and the district court made its suppression ruling) that was unavailable at the beginning of trial. Any concerns about the constitutionality of the DWI investigation, whether prompted by counsel or the court's independent review, thus should have been addressed before the City rested its case. In addition, while the district court may have treated Marquez's motion for a directed verdict as a mid-trial motion to suppress, Marquez did not explicitly request that relief and there is nothing in the court's order to indicate that it was issued in response to Marquez's directed verdict motion. When the district court ultimately suppressed evidence from the DWI investigation, it did not acknowledge that it was effectively reversing its prior rulings.

**{22}** By ruling on the suppression of evidence during trial and then immediately dismissing the DWI charge, the district court deprived the City of all rights it may have had to seek review of the suppression ruling because any appeal is now barred by double jeopardy protections. *See Lizzol*, 2007-NMSC-024, ¶ 24 (holding that even if the judge's evidentiary ruling was "egregiously erroneous," as long as it related to a factual finding preventing the state from proving its case, the resulting acquittal bars the state from appealing the ruling on double jeopardy grounds); *see also State v. Fraternal Order of Eagles Aerie 0337 Buckeye*, 569 N.E.2d 478, 481 (Ohio 1991) (The state's "absolute right to appeal the grant of a motion to suppress . . . should not be abolished by the entry of a judgment of acquittal" resulting from the court's suppression of evidence during trial.).

**{23}** Barring resolution of the suppression issue before trial, the district court should have continued Marquez's trial, and the City should have sought such a continuance, to allow the City to seek an interlocutory appeal. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (providing that an interlocutory appeal may be taken by the state within ten days from a decision or order by the district court suppressing or excluding evidence); § 39-3-3-(C) (foreclosing appeals "when the double jeopardy clause of the United States constitution or the constitution of the state of New Mexico prohibits further prosecution."). This Court has outlined the specific procedure by which the state can appeal a suppression ruling in magistrate court in order to avoid a situation similar to this one in which the defendant would be acquitted as the result of the suppression of evidence, thus barring the ability of the state to appeal. *See State v. Heinsen*, 2005-NMSC-035, ¶¶ 1, 23, 28, 138 N.M. 441, 121 P.3d 1040 (holding that, even though no statute or constitutional provision recognizes the ability of the state to appeal non-

final orders in magistrate court, the state may dismiss a case in magistrate court by filing a nolle prosequi and reinstate the charges in district court in order to appeal a suppression order before a final judgment so that the state is not barred by double jeopardy).  To further protect the state's ability to appeal a suppression ruling in magistrate court, *Heinsen* interpreted the time limitation in Rule 5-604(B)(1) NMRA (2000) as not commencing until the filing of a new indictment in district court.  *Heinsen*, 2005 NMSC-035 at ¶¶ 1, 27, 28. Although not specifically addressing a municipality's appeal rights, *Heinsen* does reflect the Court's evident concern that suppression orders generally should not be immune from appellate review.

**{24}**    Although the parties did not address its application, we now turn to Rule 5-212(C) of our Rules of Criminal Procedure, which provides that in district court proceedings "[a] motion to suppress shall be made within twenty (20) days after the entry of a plea, unless, upon good cause shown, the trial court waives the time requirement of this rule."  Rule 5-212(C) NMRA.  The accompanying commentary, however, states to the contrary that "[the Rules] do *not* require [a] motion objecting to illegally seized evidence prior to trial."  Rule 5-212 Comm. Commentary (emphasis added); *see also State v. Katrina G.*, 2008-NMCA-069, ¶ 17, 144 N.M. 205, 185 P.3d 376 ("It seems clear that, as a general rule, under . . . the Rules of Criminal Procedure, a motion to suppress evidence is not required to be made before trial and may be made at trial.").  Prior decisions of this Court and the Court of Appeals perhaps have added to the confusion, on the one hand enforcing Rule 5-212(C)'s time requirement, *see, e.g.*, *State v. East*, No. 29,486, slip op. at 4 (N.M. Ct. App. Apr. 7, 2011), and on the other hand categorically relaxing that requirement, *see Tapia*, 109 N.M. at 744 n.13, 790 P.2d at 1025 n.13; *State v. Gutierrez*, 2005-NMCA-015, ¶ 21, 136 N.M. 779, 105 P.3d 332.

**{25}**    This case illustrates the need to clarify that our rules require suppression motions to be filed prior to trial, absent good cause, as similarly required by the Federal Rules of Criminal Procedure and the rules of some other states.  *See* Fed. R. Crim. P. 12(b)(3)(C) (A motion to suppress evidence "must be raised before trial."); *see also United States v. Meraz-Peru*, 24 F.3d 1197, 1198 (10th Cir. 1994) ("A motion to suppress evidence must be raised prior to trial; the failure to so move constitutes a waiver, unless the district court, in its discretion, grants relief from the waiver for cause shown."); *see, e.g.*, Nev. Rev. Stat. § 174.125(1) (1981) ("All motions in a criminal prosecution to suppress evidence . . . and all other motions which by their nature, if granted, delay or postpone the time of trial must be made before trial, unless an opportunity to make such a motion before trial did not exist or the moving party was not aware of the grounds for the motion before trial."). We disavow the committee commentary to Rule 5-212(C) to the extent it conflicts with the time limits imposed by the Rule, and overrule *Tapia* and *Katrina G.* to the same limited extent.

**{26}**    The nullification of the City's right to appeal the district court's ruling in this case, however, requires us to go further.  As noted above, Marquez himself never moved to suppress evidence from the DWI investigation, at least not explicitly so.  Indeed, he acquiesced to the admission of some of that evidence (the video recording from the camera

8

mounted on Officer Rute's patrol car) and challenged the blood-alcohol test result only on evidentiary grounds unrelated to the legality of the DWI investigation. Instead, the district court here took up the suppression issue on its own initiative, so adherence to Rule 5-212(C)'s time limitation for filing motions would not have prevented the outcome in this case. Pursuant to "the authority granted to this Court in Article III, Section 1 and Article VI, Section 3 of the New Mexico Constitution" to "fashion, adopt and amend rules of procedure," *State v. Pieri*, 2009-NMSC-019, ¶ 19, 146 N.M. 155, 207 P.3d 1132, to give full effect to the time limitation imposed by Rule 5-212(C), and to avoid having the prosecution's appeal rights inadvertently extinguished by double jeopardy protections, we therefore hold that trial courts must *adjudicate* any suppression issues prior to trial, absent good cause for delaying such rulings until trial. *Cf. Jones v. State*, 909 A.2d 650, 659 (Md. 2006) (noting the Maryland procedural rule providing that suppression motions "shall be determined before trial" (citation omitted)); *People v. Tyler*, 874 P.2d 1037, 1039 (Colo. 1994) ("Motions to suppress evidence in criminal proceedings should be filed *and determined* prior to trial when the defendant is aware of the grounds for such motion" (emphasis added)); *Bailey v. State*, 319 So.2d 22, 28 (Fla. 1975) ("[T]he trial court should have heard and ruled upon the motion to suppress prior to the trial.").

**{27}** To be clear, this Opinion specifically addresses the suppression of evidence but does not encompass all trial court evidentiary rulings; "'[s]uppression of evidence' is limited to the situation where otherwise admissible evidence is inadmissible because of the violation of a defendant's constitutional right." *Lizzol*, 2007-NMSC-024, ¶ 28. As we previously have explained, "[t]he phrases 'motion to suppress' or 'suppress evidence' . . . are terms of art which contemplate more than the simple exclusion of evidence . . . . [A] motion to suppress presupposes that the evidence was *illegally obtained*." *Id.* (second alteration and second omission in original) (internal quotation marks omitted) (quoting *State v. Howard*, 908 S.W.2d 602, 604 (Tex. Ct. App. 1995)). We request that the Rules of Criminal Procedure for the District Courts Committee consider the best means of implementing this directive.

## III. CONCLUSION

**{28}** Because the district court found insufficient evidence to support Marquez's conviction due to its suppression ruling, its resulting order had the legal effect of an acquittal. Consequently, the order foreclosed the City's right to appeal, as double jeopardy principles constrain us from reviewing the order on its merits. *See Lizzol*, 2007-NMSC-024, ¶¶ 6, 29. Therefore, we reluctantly affirm the district court's order. In doing so we hold, prospectively, that Rule 5-212(C) requires that motions to suppress be filed before trial and that the district courts must adjudicate suppression issues before trial, absent good cause.

**{29}** **IT IS SO ORDERED.**

PATRICIO M. SERNA, Justice

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Chief Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _City of Santa Fe v. Marquez_, No. 32,885**

**CONSTITUTIONAL LAW**
Double Jeopardy
Suppression of Evidence

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Motion to Suppress
Reasonable Suspicion

**GOVERNMENT**
Municipalities
Ordinances